**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | | |
|---|---|---|
| **GORDON ROY PARKER,** Plaintiff<br>v.<br><br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania; Michelle Henry, in her official capacity as Pennsylvania Attorney General; Deborah L. Bogen, in her official capacity as Acting Secretary of Health; Larry Krasner, in his official capacity of District Attorney of Philadelphia, Pennsylvania; Merrick Brian Garland, in his official capacity as United States Attorney General;<br><br>Defendants | : : : : : : : : : : : : : : : | **Case No:**<br><br>**Complaint for Declaratory and Injunctive Relief under 42 USC §1981-1983, the First, Thirteenth, and Fourteenth Amendments, The Constitutional Right To Privacy, The Assisted Suicide Funding Act, 42 USC 14401 et seq., and 18 Pa. C.S. §2505** |

**SUE-ICIDAL COMPLAINT**

Gordon Roy Parker ("Gordon"), Plaintiff in the above-styled action, submits this Complaint, relating to medical aid in dying (MAID), specifically the violation of the Equal Protection Clause of the Fourteenth Amendment, which allows for this process in some states but not others.

**THE PARTIES**

1. Plaintiff **Gordon Roy Parker** is a resident of Philadelphia, domiciled at the Broad Street Ministry, 315 South Broad Street, #0106, Philadelphia, PA 19107, and resides in the Chinatown section of Center City. He is terminally ill, with end-stage liver disease (ESLD), and a median prognosis of less than six months, due to refractory ascites and anemia, and is not a candidate for a liver transplant. Moreover, he suffers from arterial monochromia, which carries a life expectancy of six months or less.

2. Defendant **Joshua David Shapiro** is the Governor of Pennsylvania, and can be served at 333 Market Street, 17th Floor, Harrisburg, PA 17101. He is vested with the executive power of the State and

is required to see that Pennsylvania's laws—including but not limited to laws related to health care, such as 18 Pa. C.S. §2505 – are faithfully executed. Governor Shapiro is a person within the meaning of 42 U.S.C. §1981-1983 and is acting under color of State law at all times relevant to this complaint.

3. Defendant **Deborah L. Bogen** is the Acting Secretary of Health for the Commonwealth and is responsible for enforcing the laws relating to health and safety. She is a person within the meaning of 42 U.S.C. §1981-1983 and is acting under color of State law at all times relevant to this complaint.

4. Defendant **Michelle A. Henry** is the Pennsylvania Attorney General and may be served at the Philadelphia Regional Office of the AG, 1600 Arch Street, Suite 300, Philadelphia, PA, 19103. She is responsible for prosecuting crimes, including but not limited to 18 Pa. C.S. §2505. She is a person within the meaning of 42 U.S.C. §1981-1983 and is acting under color of State law at all times relevant to this complaint.

5. Defendant **Laurence Samuel "Larry" Krasner** is the District Attorney of Philadelphia, Pennsylvania, and may be served at Three South Penn Square, Philadelphia, Pennsylvania, 19107. He is responsible for prosecuting crimes, including but not limited to 18 Pa. C.S. §2505. He is a person within the meaning of 42 U.S.C. §1981-1983 and is acting under color of State law at all times relevant to this complaint.

6. Defendant **Merrick Brian Garland** is the Attorney General of the United States, responsible for enforcing all of its laws, including but not limited to the Assisted Suicide Funding Restriction Act of 1997, 42 USC 14401 et seq. He is a person within the meaning of 42 U.S.C. §1981-1983 and is acting under color of State and Federal law at all times relevant to this complaint. He may be served at the Philadelphia US Attorney's office at 615 Chestnut Street, #1250, Philadelphia, PA 19106.

7. Defendant **Xavier Becerra** is the United States Secretary for Health and Human Services, responsible for enforcing all of its laws, including but not limited to the Assisted Suicide Funding

Restriction Act of 1997, 42 USC 14401 et seq. He is a person within the meaning of 42 U.S.C. §1981-1983 and is acting under color of State and Federal law at all times relevant to this complaint. He may be served at the HHS Region III office at 801 Market Street, Suite 9700, Philadelphia, PA 19107.

## STATEMENT OF JURISDICTION AND VENUE

8. Subject-matter jurisdiction in federal court is proper under 28 USC §1331, because of the existence of federal questions under:

a-b) 42 USC §1981-1983, for violation of constitutional rights under color of state law.

c-d) the Due Process and Equal Protection Clauses of the Fourteenth Amendment;

e-f) the Establishment and Free Exercise Clauses of the ***First*** (the very first!) Amendment;

g) the Thirteenth Amendment, prohibiting slavery;

h) 18 Pa. C.S. §2505, and

h) the Assisted Suicide Funding Restriction Act of 1997, 42 USC 14401 et seq.

9. Personal jurisdiction in Pennsylvania because all parties are domiciled or conduct businesses through offices in the Commonwealth.

10. Venue in this district is proper because all Defendants either reside, are domiciled, or conduct business within the Eastern District of Pennsylvania.

## NATURE OF CASE

*"See ya – See YA! Hope You had a good good time..."*
("Goodbye Song from 'The Magic Garden")

11. To summarize Plaintiff's arguments:

a. Suicide is a fundamental human right, supported by the First, Thirteenth, and Fourteenth Amendments, the Right to Privacy, and international human rights that are now recognized in several countries, such as The Netherlands, though their "absence of selfish reasons" restriction is also unconstitutional, as suicide is an inherently selfish act; capitalism itself is rooted in selfishness.

b. Forcing an individual – even a healthy, young one – to continue living violates the Thirteenth Amendment's prohibition against slavery.

c. Absent a compelling interest – a "red flag" such as coercion – the government has no right to interfere with Plaintiff's rights as set forth above. Mental illness, by itself, is insufficient grounds for interference. To balance this right, in the absence of terminal illness, the burden should shift to the individual to establish lack of coercion.

d. A person who is capable of ending his life on his own, instantly, has established the right to Medical Aid in Dying (MAID), as part of his general right to medical care, on a par with his right to be free of pain during medical procedures or in general.

e. Doctors, or any medical state actors, are prohibited from interfering with this fundamental right, and must provide the means for MAID to those who request it.

f. The Suicide Funding Restriction Act of 1997, 42 USC 14401 ***et seq***. is an unconstitutional restriction which disables the ability of federally-funded medical centers to offer MAID, even in states such as Vermont where this is legal.

g. 18 Pa. C.S. §2505 violates Plaintiff's constitutional rights under the First and Thirteenth Amendments, as well as his right to privacy.

h. The requirement for multiple written requests up to fifteen days apart in various states, including New Jersey and presumably Pennsylvania (if this suit prevails) is an unconstitutional and unnecessary hardship, absent the presence of red flags. At most, the maximum waiting period should be

three days, without the requirement of witnesses, and with a single request for MAID sufficient to trigger the process.

12. Plaintiff is physically capable of ending his life without government interference in a matter of minutes, such as by the time-honored method in Philadelphia of jumping in front of the Market-Frankford Line at the City Hall Station, during the peak of rush hour, as many in his city have done since he moved there in 1986. This capability alone should trigger his legal right to end his life, as he sees fit, anytime he sees fit, without any government interference, absent any "red flags," including but not limited to compelling evidence of coercion. Plaintiff is not being coerced.

**Nature of Arguments**

13. Brown v. Board of Education of Topeka Kansas, 347 U.S. 483 (1954) and 349 U.S. 294 (1955); was the culmination of fifteen years of piecemeal decisions that chipped away at segregation, offering a long-awaited total resolution of a morass of lower-court precedent. This lawsuit attempts to do the same for MAID, but with much greater time pressure and much higher stakes. The pain of segregation, while severe, pales in comparison to the physical pain of dying on nature's terms.[1] If Plaintiff does not prevail here, and fast, he and others will suffer needlessly even more than they already have.

14. Plaintiff is not merely seeking to abolish all laws against suicide, or to make MAID legal in all fifty states. He asserts suicide as a fundamental human privacy right, similar to abortion, regardless of how much time he has left, whether or not he is physically or even mentally ill, and even if his judgment is impaired, as long as he is free and functioning in society, as both classes of people do all the

[1] These decisions, which targeted pockets of segregation without eliminating the human-rights cancer in its entirety, include Missouri ex rel. Gaines v. Canada, 305 U.S. 337 (1938); Sipuel v. Board of Regents of University of Oklahoma, 332 U.S. 631 (1948); Sweatt v. Painter, 339 U.S. 629 (1950); McLaurin v. Oklahoma State Regents, 339 U.S. 637 (1950); Briggs v. Elliott, 98 F. Supp. 529 (E.D.S.C. 1951), aff'd sub nom. Davis v. County School Board of Prince Edward County, 103 F. Supp. 337 (E.D. Va. 1952), aff'd sub nom; Brown v. Board of Education, 349 U.S. 294 (1955); Gebhart v. Belton, 91 A.2d 137 (Del. Ch. 1952), aff'd, 93 A.2d 302 (Del. 1952), aff'd sub nom. Bolling v. Sharpe, 347 U.S. 497 (1954).

time. Anything less makes him a slave to the government. Alternatively, he seeks nothing more than the right to end his life in his home, rather than exercise a woefully innocent "right" to do so in Vermont, one almost as tortuous as no right at all, as clearly set forth by Vermont:

> Please be aware that the process is not quick or easy for people coming from out of state for medical aid in dying. There are many arrangements that must be made in a step-by-step process. If you are early in your terminal diagnosis, if you are relatively mobile, if you have the ability to do research and make the arrangements, then it is more likely that you will be able to access this care. Most people will find that having a group of supportive friends and family to assist them with tasks will be valuable. Please also be aware that there is no organization or person who will make all the arrangements for you. There is no "Program" as such. The Vermont medical community is already working hard to serve its existing patients. ***Many areas of Vermont remain underserved with doctors and healthcare providers. Vermont's doctors may not be readily available to assist you with medical aid in dying.*** It may take some time to accomplish all that is required.[2]

15. The above website also puts Pennsylvania doctors at risk of prosecution for aiding Plaintiff in exercising his rights in Vermont, demonstrating woefully inadequate "equal protection under the law":

> We highly recommend discussing your end-of-life care and plans with your existing medical team, including your primary care doctor, any relevant specialists and a palliative care physician. Include the people who are close to you in these discussions. If you are already on hospice, include your hospice provider. Make sure you understand all your options for comfort care and treatment. Evaluate whether you meet all the requirements of Vermont's medical aid in dying law. You must:
>
> > Have a terminal illness with a prognosis of six months or less to live,
> > Be capable of making your own health care decisions,
> > Be making an informed and voluntary request, and
> > Be able to self-administer the medication.
>
> If your doctor practices in a state that does not allow medical aid in dying, ask them to confirm that you meet these requirements. Ask them to advise you about whether you can swallow and absorb the oral medication so that it will work as intended. You can suggest that your doctor review the Clinician's Guide to Medical Aid in Dying, especially the section on Clinical Considerations and Red Flags. Familiarize yourself with the requirements, including two oral requests, a written request and a second doctor's opinion. We suggest you download the PCV Guide to Medical Aid in Dying.[3]

16. The following requirement is even more draconian, imposing a logistical nightmare on Plaintiff, and the risk of prosecution for any of his Pennsylvania physicians:

> 3. Are You Able to Travel to Vermont

---

[2] https://www.patientchoices.org/non-residents.html, retrieved May 31, 2024.
[3] Ibid.

> All the required actions must be undertaken physically in Vermont. You must be present in this state for each step in the process, including doctor meetings, formal requests, obtaining the prescription and self-administering the medication.
>
> TO BE CLEAR: You will not be able to remain at home and have your appointments by telemedicine. You will not be able to take the medication back to your home state. Think carefully about whether you can travel and arrange everything required for you to be in the State of Vermont for each step in the process of requesting and using medical aid in dying.
>
> You will need transportation and a place to stay for all visits and the final self-administration of the medication. Some people choose to stay through the whole process. Others come to Vermont for each medical visit and then arrange for a stay to cover their final request and self-administration of the medication. Each individual's circumstances will determine how much or how little time they stay in Vermont between each of the steps involved in the process (all physician visits including first request and second request, procurement of the medication, and use of the medication). [4]

17. This next requirement is even more blatantly unconstitutional than segregation pre-Brown:

> You must establish a relationship with a Vermont-licensed doctor who is practicing in Vermont and who is able and willing to prescribe the end-of-life medication after you meet all of the requirements. Your Vermont doctor will need to assess your situation, make the appropriate findings and prescribe. Your prescribing doctor will also need to have you see a second Vermont-licensed doctor for confirmation that you meet the qualification requirements.
>
> Finding a Vermont Doctor: The best way to connect with a Vermont doctor is by referral from your existing physician. Ask your doctor to approach your request like any other medical referral. If your doctor doesn't have specific contacts in Vermont, they should contact their equivalent department (oncology, neurology, etc.) at a medical facility in Vermont. If any doctors on your team need additional guidance, they can contact PCV for further guidance. Be aware that Vermont doctors will not be able to tell you over the phone if you will qualify. ***You must be willing to take the risk, and physically come to Vermont for medical consultations.*** Then, you will learn whether medical aid in dying will be available for you.
>
> Physicians employed by federally funded facilities such as the VA and FQHCs are not allowed to prescribe the medication. Also note that physicians have no legal obligation to participate in medical aid in dying.
>
> Patient Choices Vermont does not maintain a list of doctors to whom we can refer you. We can coach you on how to have a conversation with your doctor to request a direct referral.
>
> This is a list of medical centers that have doctors that may be able to assist you.
> A Vermont doctor will at a minimum require the following information in order to evaluate your case:
>
> Summary of your medical condition

[4] Ibid.

Expectation of life expectancy and terminal illness
Up to date medication list
Signature from patient's physician that they have a six month or less prognosis. [5]

18. ***When will this madness end?*** Plaintiff's already-strong decision to engage in MAID was cemented over an eight day period that included the following:

a. Ascites which would turn out to be ***8.5 litres***, adding twenty-five pounds to his weight, demanding that his already-weakened body carry around the equivalent of almost two bowling balls.

b. An inability to secure a hepatology appointment with Temple, his regular care provider, until June 14, 2024.

c. The refusal by Jefferson Emergency on or around May 22, 2024 to perform a paracentesis to relieve Plaintiff's agony. He was, however, given a shot of morphine and dumped onto the streets of Center City at Midnight, forcing him to walk home, resulting in major leg cramping for the next day.

d. Plaintiff eventually managed to see his primary care doctor, who delegated the visit to a nurse practitioner acting well beyond the scope of any nurse he had ever dealt with, though a doctor was present for the visit. On May 29, 2024 he was given a referral for a paracentesis, which was performed at noon the next day, only after Plaintiff was forced to ***beg*** for an appointment which should have been made freely. He considers the lack of doing so to be medical malpractice, and compelling evidence of why this lawsuit should prevail.

19. This Court is well-acquainted with Plaintiff's life story, from previous lawsuits. He need not elaborate further, other than to say that this lawsuit is unrelated to his past, reflecting a belief he has held since age eighteen, a year after he made a half-hearted suicide attempt over extreme teenage angst. He

[5] Ibid.

has made no such attempt since, nor should this history disqualify him from MAID, as he is now suing to avoid physical pain alone, not mental anguish, as any reasonable individual would.

20. While waiting for death or the right to inflict it, Plaintiff takes every day God gives him, despite increasing, often-excruciating pain, and rapidly decreasing functionality. He asserts his ability to commit suicide on his own, and general freedom, as ***prima facie*** evidence of his competence, and his terminal medical condition of lack of coercion.

**Request For Expedited Rulings**

21. Obviously.

**COUNT ONE: DECLARATORY RELIEF AND INJUCTION**
**(ASSISTED SUICIDE FUNDING RESTRICTION ACT; ALL DEFENDANTS)**

22. Plaintiff incorporates by reference, as if set forth verbatim herein, the entire contents of paragraphs 1-21 hereinabove.

23. This count seeks declaratory relief based on the argument set forth in paragraph 11(f) that the Assisted Suicide Funding Restriction Act, 42 USC 14401 ***et seq.***, violates Plaintiff's Constitutional Right To Privacy, as well as his Thirteenth Amendment Right against involuntary servitude.

24. The Defendants are all state actors subject to either the Constitution, or 42 USC §1983.

25. Plaintiff further seeks an injunction enjoining all Defendants from enforcing this law, or any other regulation or state-level statute which was influenced by or required under this law.

26. Plaintiff is also entitled to any costs of suit allowed by law, and such other and further relief intended to make him whole.

**COUNT TWO: DECLARATORY RELIEF AND INJUCTION**
**(42 USC §1983; ALL DEFENDANTS)**

27. Plaintiff incorporates by reference, as if set forth verbatim herein, the entire contents of paragraphs 1-26 hereinabove.

28. This count seeks declaratory relief based on the argument set forth in paragraph 11(g) that 18 PA. C.S. §2505 violates Plaintiff's Constitutional Right To Privacy, as well as his Thirteenth Amendment Right against involuntary servitude.

29. The Defendants are all state actors subject to either the Constitution, or 42 USC §1983.

30. The state-law Defendants, by violating Plaintiff's constitutional rights under color of state law, have violated his rights under 42 USC §1983

31. Plaintiff further seeks an injunction enjoining all Defendants from enforcing laws which violate this right, or any other regulation or state-level statute which was influenced by or required under this law.

32. Plaintiff is also entitled to any costs of suit allowed by law, and such other and further relief intended to make him whole.

**COUNT THREE: DECLARATORY RELIEF AND INJUCTION**
**(FIRST AMENDMENT; FEDERAL DEFENDANTS)**

33. Plaintiff incorporates by reference, as if set forth verbatim herein, the entire contents of paragraphs 1-32 hereinabove.

34. The federal Defendants' conduct, as set forth hereinabove in paragraph 11, constitutes a violation of Plaintiff's First Amendment right of free expression.

35. Plaintiff seeks an injunction enjoining all Defendants from violating this right.

36. Plaintiff is also entitled to any costs of suit allowed by law, and such other and further relief intended to make him whole.

**COUNT FOUR: DECLARATORY RELIEF AND INJUCTION**
**(THIRTEENTH AMENDMENT; FEDERAL DEFENDANTS)**

37. Plaintiff incorporates by reference, as if set forth verbatim herein, the entire contents of paragraphs 1-36 hereinabove.

38. The federal Defendants' conduct, as set forth hereinabove in paragraph 11, constitutes a violation of Plaintiff's Thirteenth Amendment right to be free of indentured servitude.

39. Plaintiff seeks an injunction enjoining the federal Defendants from violating this right.

40. Plaintiff is also entitled to any costs of suit allowed by law, and such other and further relief intended to make him whole.

**COUNT FIVE: DECLARATORY RELIEF AND INJUCTION**
**(FOURTEENTH AMENDMENT; FEDERAL DEFENDANTS)**

41. Plaintiff incorporates by reference, as if set forth verbatim herein, the entire contents of paragraphs 1-40 hereinabove.

42. The federal Defendants' conduct, as set forth hereinabove in paragraph 11, constitutes a violation of Plaintiff's Fourteenth Amendment rights to Due Process, and personal bodily autonomy.

43. Plaintiff seeks an injunction enjoining the federal Defendants from violating these rights.

44. Plaintiff is also entitled to any costs of suit allowed by law, and such other and further relief intended to make him whole.

**COUNT SIX: DECLARATORY RELIEF AND INJUCTION**
**(RIGHT TO PRIVACY; ALL DEFENDANTS)**

45. Plaintiff incorporates by reference, as if set forth verbatim herein, the entire contents of paragraphs 1-44 hereinabove.

46. The federal Defendants' conduct, as set forth hereinabove in paragraph 11, constitutes a violation of Plaintiff's Constitutional Right to privacy.

47. Plaintiff seeks an injunction enjoining the all Defendants from violating this right.

48. Plaintiff is also entitled to immediately begin the process of MAID, and an injunction requiring any state medical actor to accommodate this wish, without any delay, without any witness requirements, and with a presumption of constitutionally protected competence and autonomy.

49. Plaintiff is also entitled to any costs of suit allowed by law, and such other and further relief intended to make him whole.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks the following relief:

1. A declaration that suicide is a fundamental human right, supported by the First, Thirteenth, and Fourteenth Amendments, and the Right to Privacy.

2. A declaration that forcing an individual – even a healthy, young one – to continue living violates the Thirteenth Amendment's prohibition against slavery.

3. A declaration that absent a compelling interest – a "red flag" such as coercion – the government has no right to interfere with Plaintiff's rights as set forth above. Mental illness, by itself, is insufficient grounds for interference. To balance this right, in the absence of terminal illness, the burden should shift to the individual to establish lack of coercion.

4. A declaration that a person who is capable of ending his life on his own, instantly, has established the right to Medical Aid in Dying (MAID), as part of his general right to medical care, on a par with his right to be free of pain during medical procedures or in general.

5. A declaration that any medical state actors are prohibited from interfering with this fundamental right, and must provide the means for MAID to those who request it.

6. A declaration that the Suicide Funding Restriction Act of 1997, 42 USC 14401 ***et seq.*** is an unconstitutional restriction which disables the ability of federally-funded medical centers to offer MAID, even in states such as Vermont where this is legal.

7. A declaration that 18 Pa. C.S. §2505 violates Plaintiff's constitutional rights under the First and Thirteenth Amendments, as well as his right to privacy.

8. A declaration that the requirement for multiple written requests up to fifteen days apart in various states, including New Jersey and presumably Pennsylvania (if this suit prevails) is an unconstitutional and unnecessary hardship, absent the presence of red flags. At most, the maximum waiting period should be three days, without the requirement of witnesses, and with a single request for MAID sufficient to trigger the process.

9. An injunction permitting Plaintiff to immediately commence the process of MAID.

This the 3rd Day of June, 2024.

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA 19107
gordonroyparker@gmail.com
(215) 951-4131

*e-mail or text preferred contact

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

GORDON ROY PARKER

**(b)** County of Residence of First Listed Plaintiff: Philadelphia, Pennsylv
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS**

Joshua David Shapiro, in his official capacity as Governor of Pennsylvania; Michelle Henry, in her official capacity as

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

REC'D JUN 3 2024

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☒ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC §1983

Brief description of cause:
Patient seeks the right to die under physician assistance, similar to laws already in place in other states

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: June 3, 2024

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| June 3, 2024 | Gordon Roy Parker | Pro Se |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-951-4131 | | GordonRoyParker@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |