**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>Plaintiff<br>v.<br><br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al.<br><br>Defendants | REC'D JUN 10 2024<br><br>**Case No: 2:24-cv-02279-RBS** |

**MOTION FOR PRELIMINARY INJUNCTION AND**
**CONSOLIDATED TRIAL PURSUANT TO FEDERAL RULE 65**

Plaintiff Gordon Roy Parker, seeks a preliminary injunction and consolidated trial on the merits, pursuant to Federal Rule 65, which governs such relief. In support, he submits the following:

**PLAINTIFF IS DYING! (INTRODUCTION)**

Plaintiff's doctors are reticent to declare he has six months to live, lest they be construed as assisting suicide, but Plaintiff's most recent labs all but show he'd be lucky to survive and function for that long. Things are about to get very ***bad*** for him: he has refractory ascites (prognosis: six months), with 8.5 liters removed in May, two weeks after 6.0 liters were removed, severe anemia (prognosis: 6-12 months, zero five-year survival), and may have lung cancer, all recently developed as his numbers have broken sharply from normal range in the past few months (e.g., hemoglobin plummeted to 8.4 from nearly normal).

Left to nature, Plaintiff is looking at two paths:

- Rapid deterioration of functionality, kidney failure, encephalopathy, rapid weight loss, increased risk of infection or accident, inability to care for himself at all, excruciating, chronic pain, and ultimately total organ failure leading to a painful and certain death, potentially stuck in a hospital or nursing home, where the abuse risk skyrockets.

- Moving to Vermont, spending thousands of dollars, burdening his loved ones and caregiver, with extreme logistical difficulty in accessing Medical Aid in Dying (MAID), due to a physician shortage, and the nightmare of having to work with his doctors in Pennsylvania, who are risk-averse to potentially breaking the law.

- The third option – allowing Plaintiff to access MAID in Pennsylvania, is what he seeks to establish here, or alternatively, to eliminate New Jersey's residency requirement, which would be the next-best thing. While Plaintiff has asserted an inalienable right under the Thirteenth Amendment to end his life without delay or justification, simply allowing him this access to MAID would achieve his primary goal. This relief should be granted in light of the existing litigation and settlements, which all but forced Vermont and Oregon to change policy.

Nonprofits like ***Compassionate Choices*** (who rejected Plaintiff for representation after it was filed), have chosen a piecemeal approach to resolving MAID that has resulted in Gavatos *et al.* v. Murphy *et al.*, D.NJ, #23-12601, a nearly duplicate lawsuit which seeks to eliminate New Jersey's residence requirement. While this might aid Plaintiff, settlements in similar cases in Vermont and Oregon have left Plaintiff without the ***equal protection*** it was supposed to achieve, as evidenced by the logistical and financial impediments.

Plaintiff's current condition is sufficient to quality him for MAID, yet he is left with few if any practical alternatives for exercising this right that don't involve tremendous hardship. Plaintiff has therefore concluded that it is easier to sue here than to go there, hence the existence of this lawsuit, for

which he seeks expedited relief and/or a consolidated trial on the merits. The Complaint has or shortly will have been served on all Defendants, along with a copy of this emergency motion.

## BACKGROUND

### Plaintiff Would Rather Die At Home In Pennsylvania

1. There is no ***greater good*** which differentiates whether or not Plaintiff should end his life in a hotel room in Vermont, or in his air-conditioned bedroom in Philadelphia, near his caregiver or perhaps in New Jersey, should the active case there settle.

2. The government, who Plaintiff has said has no right to keep him alive against his will, due to the Thirteenth Amendment, will not suffer one iota because of his choice of venue, but Plaintiff most certainly ***will*** suffer, and suffer profusely.

3. The simple relief of being allowed to initiate MAID in Pennsylvania, or even New Jersey, on Fourteenth Amendment grounds, would satisfy his prayers for relief in a substantial manner, without injury to the government or any party, while allowing this Court to consider the bolder Thirteenth Amendment claim, which Plaintiff believes should prevail, as no compelling interest for the government does not amount to indentured servitude against Plaintiff.

4. Plaintiff is seeking not to end his life the moment he secures the means to do so, but to have them within arm's reach for when the time comes. Remaining in Philadelphia keeps him tethered to a very stable and strong support system, and would allow him to make a final appearance at the 2024 World Open Chess tournament, where he intended to debut decades of research, while reconnecting with the chess world one last time. He recently achieve yet another lifetime peak one-minute rating on LiChess of 2347, placing him in the top three or four percent of players in the world in his niche. If forced to scramble to Vermont to avoid being trapped in Pennsylvania, this will not be possible. He further submits his sustained high level of play as ***prima facie*** evidence of a sharp, consensual mind.

5. Plaintiff is not being coerced, has thought this decision out since age eighteen, and will not be making any miracle recovery; death is coming for him, and the only question is how, a question this Court can answer in a humane and ***constitutional*** manner by eliminating the impassible roadblocks currently staring him in the face, roadblocks already under attack in multiple cases, all but one of which were settled rather than to avoid the ruling he seeks here, on a much more time-sensitive basis, due to his rapidly deteriorating health.

**RELIEF SOUGHT**

Plaintiff seeks the following relief:

1. A declaration that suicide is a fundamental, inviolable Constitutional right under the Thirteenth Amendment, and that no compelling government interest can exist for keeping Plaintiff alive against his will that does not amount to involuntary servitude for Plaintiff, either because he is terminally ill, or because he exists (without regard to his condition).

2. Alternative to 1) above, a declaration that not allowing MAID in Pennsylvania, when it is available in other states, violates the Equal Protection Clause of Fourteenth Amendment of the Constitution, and an order allowing Plaintiff to initiate and complete MAID within the Commonwealth.

3. Alternative to 2) above, an order allowing Plaintiff to initiate MAID from his home in Pennsylvania, either in Vermont, under its existing program, with a requirement that Plaintiff must be provided the means, or in New Jersey, based on the Fourteenth Amendment.

4. An Order consolidating this motion with trial on the merits, against all of the listed Defendants.

5. An order eliminating the fifteen-day waiting period, the requirement for witnesses, and for multiple requests.

A Memorandum of Law is attached.

This the 10th day of June, 2024

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA 19107
gordonroyparker@gmail.com
(215) 951-4131

*e-mail or text preferred contact

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| GORDON ROY PARKER, Plaintiff v. Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al. Defendants | : | Case No: 2:24-cv-02279-RBS |
|---|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND CONSOLIDATED TRIAL PURSUANT TO FEDERAL RULE 65**

Plaintiff submits this memorandum of law in support of the instant motion.

## I. INTRODUCTION

Federal Rule 65 states that:

> (1) ***Notice.*** The court may issue a preliminary injunction only on notice to the adverse party.
>
> (2) ***Consolidating the Hearing with the Trial on the Merits***. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

Time is certainly of the essence in this case, and Plaintiff appears likely to succeed on the merits at least on the issue of residency, and perhaps more. The irreparable harm caused by delay is self-evident: Plaintiff is dying, and will continue to suffer without MAID, at great cost to the healthcare system, the impetus for a quick ruling on the merits for both this motion and a quick trial is self-evident.

## BACKGROUND FACTS

1. Plaintiff has two conditions with a life expectancy of 6-12 months:

a. ***Refractory Ascites***. Refractory ascites occurs when ascites (accumulation of fluid in the abdominal cavity) cannot be controlled by standard medical therapy, including salt restriction and high-dose diuretics. It is a complication commonly seen in patients with end-stage liver disease (ESLD), often due to cirrhosis. This condition is diagnosed when there is a lack of response to diuretics, or if complications from diuretics occur (e.g., kidney dysfunction or electrolyte imbalance). After three years without needing a paracentesis, Plaintiff has had three "stomach taps":

| Date | Fluid Removed |
|---|---|
| April 6, 2024 | 3.0 litres |
| May 9, 2024 | 6.0 litres |
| May 30, 2024 | 8.5 litres |

b. ***Severe Anemia.*** Plaintiff's Hemoglobin count has plummeted into dangerous, ***fatal*** territory, indicating a median life expectancy of six months (fewer now), and a five-year survival rate of ***zero.***

| Date | RBC | Normal Range |
|---|---|---|
| June 8, 2024 | 7.9 g/dl | 14-17 g/dl (ER Visit PA Hosp.) |
| May 22, 2024 | 8.4 g/dl | 14-17 g/dl |
| April 6, 2024 | 9.6 g/dl | 14-17 g/dl |

c. ***7mm node in upper left lung***. This node has yet to be tested, but could be cancerous. Plaintiff's voice has been hoarse for weeks.

2. Without MAID, and without a liver transplant (his doctors have refused to have him evaluated for one, mostly in retaliation for his whistleblowing against UPenn, as outlined in his previous lawsuits), Plaintiff's future looks something like this, according to ChatGPT-4o, who was given five scenarios (including diabetes, with Plaintiff's A1C now at a life-threatening 12.4):

***Scenario 1: Progressive Liver Failure and Complications***
Timeline: 3-6 months

Description: The patient's liver function continues to deteriorate, leading to worsening refractory ascites, hepatic encephalopathy, and increasing jaundice. Complications such as spontaneous bacterial peritonitis (SBP) become more frequent despite prophylactic antibiotics. The severe anemia and low platelet count increase the risk of significant bleeding, including gastrointestinal bleeding. The patient may experience multiple hospitalizations for infections, bleeding, and ascites management. Without a liver transplant, progressive multi-organ failure occurs, leading to death within 3 to 6 months.

***Scenario 2: Severe Anemia and Cardiac Complications***

Timeline: 1-3 months

Description: The severe anemia (hemoglobin 8.4 g/dL) leads to increased cardiac workload and eventually heart failure. The patient's heart must work harder to pump the reduced oxygen-carrying capacity of the blood, leading to symptoms such as shortness of breath, fatigue, and chest pain. As the anemia worsens and remains untreated, it can precipitate acute cardiac events such as myocardial infarction or heart failure, resulting in death within 1 to 3 months.

***Scenario 3: Uncontrolled Hyperglycemia and Diabetic Complications***

Timeline: 1-2 months

Description: The extremely high glucose level (525 mg/dL) indicates severe uncontrolled diabetes, which can lead to diabetic ketoacidosis (DKA) or hyperosmolar hyperglycemic state (HHS). These conditions are medical emergencies that can cause dehydration, electrolyte imbalances, and organ failure. Without immediate and effective management of hyperglycemia, the patient may fall into a coma and die within 1 to 2 months.

***Scenario 4: Lung Nodule Malignancy Progression***

Timeline: 3-6 months

Description: The 7 mm lung nodule, if malignant, may represent a primary lung cancer or metastasis. As the malignancy progresses, it can lead to respiratory failure, significant weight loss, and metastatic spread to other organs. The combination of advancing cancer and underlying ESLD accelerates the decline in health. With the immune system already compromised, infections and complications from both cancer and liver disease can result in death within 3 to 6 months.

***Scenario 5: Electrolyte Imbalance and Neurological Complications***

Timeline: 1-3 months

Description: The low sodium level (129 mmol/L) can lead to severe hyponatremia, which poses a risk for seizures, altered mental status, and coma. The patient may experience confusion, severe fatigue, and neurological deficits. If hyponatremia worsens and is not corrected promptly, it can cause cerebral edema and fatal neurological complications, leading to death within 1 to 3 months.

Summary:

Progressive Liver Failure and Complications: 3-6 months.
Severe Anemia and Cardiac Complications: 1-3 months.
Uncontrolled Hyperglycemia and Diabetic Complications: 1-2 months.
Lung Nodule Malignancy Progression: 3-6 months.
Electrolyte Imbalance and Neurological Complications: 1-3 months.
These scenarios illustrate potential pathways and timelines based on the patient's current medical condition and test results. Immediate and comprehensive medical intervention is crucial to potentially prolong life and improve quality of life.

## II. LEGAL STANDARD

A party seeking a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 must establish four elements: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004).

### A. RULE 65 MOTIONS

#### 1. Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits, the movant must show that it has a "reasonable probability" of prevailing on the merits of the underlying case. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). This does not mean the movant must prove its case with absolute certainty; rather, it must present a prima facie case showing a sufficient legal basis for the claims asserted.

#### 2. Irreparable Harm

Irreparable harm is harm that cannot be adequately compensated by monetary damages and must be actual and imminent, not speculative. Winter, 555 U.S. at 22. The movant must demonstrate that the harm is of such a nature that legal remedies alone would be

insufficient to prevent the injury. Adams v. Freedom Forge Corp., 204 F.3d 475, 484-85 (3d Cir. 2000).

**3. Balance of Harms**

The court must weigh the potential harm to the movant against the potential harm to the nonmoving party if the injunction is granted. This balancing of harms requires the court to consider whether the harm to the movant, absent the injunction, outweighs the harm to the nonmoving party if the injunction is issued. Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 143 (3d Cir. 2017).

**4. Public Interest**

Finally, the court must consider whether granting the preliminary injunction is in the public interest. This involves assessing the effect of the injunction on the public and ensuring that the relief sought will not adversely affect public policy. Kos Pharm., 369 F.3d at 728.

In sum, a preliminary injunction is an extraordinary remedy and should be granted only in cases where the movant has clearly established its right to such relief. Winter, 555 U.S. at 24. The court must conduct a careful analysis of these factors and exercise its discretion accordingly.

**5. First, Thirteenth, And Fourteenth Amendments.**

The First Amendment protects freedom of expression, the Thirteenth Amendment prohibits involuntary servitude, and the Fourteenth Amendment provides equal protection under the law.

**6. Claims Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived the plaintiff of rights, privileges, or immunities secured by the

Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988). The plaintiff must show that the defendant's actions were the proximate cause of the constitutional violation. Martinez v. California, 444 U.S. 277, 285 (1980).

## B. CONSTITUTIONAL RIGHT TO PRIVACY

The Constitutional Right to Privacy, although not explicitly mentioned in the Constitution, has been recognized by the Supreme Court as derived from the Due Process Clause of the Fourteenth Amendment. This right encompasses two types of privacy interests: (1) the individual interest in avoiding disclosure of personal matters, and (2) the interest in making certain kinds of important decisions free from government interference. Whalen v. Roe, 429 U.S. 589, 599-600 (1977); Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 849 (1992). To establish a violation of this right, a plaintiff must demonstrate that the government's action was a substantial and unjustified intrusion into a protected area of privacy.

## C. ASSISTED SUICIDE FUNDING RESTRICTION ACT (42 U.S.C. § 14401 ET SEQ.)

The Assisted Suicide Funding Restriction Act (ASFRA) prohibits the use of federal funds for assisted suicide, euthanasia, or mercy killing. Specifically, 42 U.S.C. § 14402 provides that no funds appropriated by Congress shall be used for any item or service, including the use of facilities or equipment, in any health care item or service furnished for the purpose of causing, or assisting in causing, the death of any individual. Plaintiffs challenging actions under this Act must demonstrate that the denial of federal funding for assisted suicide-related services violates their constitutional or statutory rights.

## D. PENNSYLVANIA'S PROHIBITION AGAINST AIDING SUICIDE (18 PA. C.S. § 2505)

Under 18 Pa. C.S. § 2505, a person commits a felony of the second degree if they intentionally cause or aid another person to commit suicide. The statute distinguishes between

causing suicide through force, duress, or deception and aiding or soliciting suicide through other means. To establish liability under this statute, the prosecution must show that the defendant's conduct was a substantial factor in bringing about the suicide and that the conduct was done with the intent to cause or aid in the commission of suicide.

## III. ARGUMENT

### A. Plaintiff Has An Absolute Thirteenth-Amendment Right To Suicide

Plaintiff asserts that life itself for someone who does not wish it is involuntary servitude, and that no compelling interest asserted by the government can avoid violating this inalienable right. Alternatively, anyone in Plaintiff's situation has the same Thirteenth Amendment Right.

### B. Plaintiff Meets The Requirements For Rule 65

1. Plaintiff is likely to succeed on the merits; even if not, an expedited trial prevents 2) the irreparable harm of dying before being granted relief; there is 3) no harm to anyone to grant this relief to Plaintiff, on an issue which 4) is in the public interest, and will benefit from clarity.

### C. Plaintiff Is Entitled To Initiate MAID

**1. MAID In Vermont.** Plaintiff should be able to initiate MAID in Vermont, from Philadelphia, with no delays or impediments, and without having to travel.

**2. MAID In NJ.** Alternatively, Plaintiff is entitled to initiate MAID in New Jersey immediately, without the residency requirement. He lives four miles from Camden and could travel if need be, but should not have to.

3. **MAID In PA.** Any restrictions on MAID in Pennsylvania are unconstitutional under the Fourteenth Amendment, but not the Privileges and Immunities Clause, as that would trample on the Tenth Amendment.

4. **Immediate MAID.** Plaintiff is entitled to immediate access to MAID, without cumbersome waiting periods, arbitrary prognoses on when he might inevitably die, and without witness requirements. A single written request should suffice.

## IV. CONCLUSION

No one should be forced to live this way, and it is only going to get worse for Plaintiff, likely very suddenly. Plaintiff is compelled by the state to continue living, against his desires, without the option of controlling his exit when the time comes, likely soon, not because the state outlaws MAID, but because he lives in the wrong state, in violation of the Fourteenth Amendment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks the following relief:

1. A declaration that suicide is a fundamental human right, supported by the First, Thirteenth, and Fourteenth Amendments, and the Right to Privacy.

2. A declaration that forcing an individual – even a healthy, young one – to continue living violates the Thirteenth Amendment's prohibition against slavery.

3. A declaration that absent a compelling interest – a "red flag" such as coercion – the government has no right to interfere with Plaintiff's rights as set forth above. Mental illness, by itself, is insufficient grounds for interference. To balance this right, in the absence of terminal illness, the burden should shift to the individual to establish lack of coercion.

4. A declaration that a person who is capable of ending his life on his own, instantly, has established the right to Medical Aid in Dying (MAID), as part of his general right to medical care, on a par with his right to be free of pain during medical procedures or in general.

5. A declaration that any medical state actors are prohibited from interfering with this fundamental right, and must provide the means for MAID to those who request it.

6. A declaration that the Suicide Funding Restriction Act of 1997, 42 USC 14401 ***et seq***. is an unconstitutional restriction which disables the ability of federally-funded medical centers to offer MAID, even in states such as Vermont where this is legal.

7. A declaration that 18 Pa. C.S. §2505 violates Plaintiff's constitutional rights under the First and Thirteenth Amendments, as well as his right to privacy.

8. A declaration that the requirement for multiple written requests up to fifteen days apart in various states, including New Jersey and presumably Pennsylvania (if this suit prevails) is an unconstitutional and unnecessary hardship, absent the presence of red flags. At most, the maximum waiting period should be three days, without the requirement of witnesses, and with a single request for MAID sufficient to trigger the process.

9. A declaration that the life expectancy is arbitrary, and that terminal illness and substantial deterioration, plus chronic pain and reduced functioning, should trigger MAID.

10. A declaration that 18 Pa. C.S. §2505 and the Assisted Suicide Funding Restriction Act (42 USC §14401 ***et seq.***) are unconstitutional impediments to MAID.

11. An injunction permitting Plaintiff to immediately commence the process of MAID in Pennsylvania, and an order requiring the Commonwealth to provide the necessary means to do so.

This the 10th Day of June, 2024.

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA 19107

gordonroyparker@gmail.com
(215) 951-4131

*e-mail or text preferred contact

**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | | |
|---|---|---|
| **GORDON ROY PARKER,**<br>Plaintiff<br>v.<br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al.<br>Defendants | : : : : : : : : : : : : : : : | **Case No: 2:24-cv-02279-RBS** |

**ORDER**

**AND NOW,** this ____ day of June, 2024, upon consideration of **Motion For Preliminary Injuction And Consolidated Trial Pursuant To Federal Rule 65,** It is hereby ORDERED that the motion is **granted.**

______________________________
J.

**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | | |
|---|---|---|
| **GORDON ROY PARKER,**<br>Plaintiff<br>v.<br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al.<br>Defendants | : | **Case No: 2:24-cv-02279-RBS** |

**CERTIFICATE OF SERVICE**

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby certify and swear that I have served the following pleadings on defense counsel, by **hand delivery:** 1) Complaint; 2) Plaintiff's Motion For Preliminary Injuction And Consolidated Trial Pursuant To Federal Rule 65 on the following Defendants, with summons:

1. Joshua David Shapiro (333 Market Street, 17th Floor, Harrisburg, PA 17101)
2. Michelle A. Henry (1600 Arch Street, Suite 300, Philadelphia, PA, 19103)
3. Deborah L. Bogen (625 Forster Street, 8th Floor West, Harrisburg, PA 17120)
4. Laurence Samuel Krasner (Three South Penn Square, Philadelphia, Pennsylvania, 19107)

5. Merrick Brian Garland (615 Chestnut Street, #1250, Philadelphia, PA 19106)

6. Xavier Bacerra (hand delivery to 801 Market Street, Suite 9700, Philadelphia, PA 19107)

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA 19107
gordonroyparker@gmail.com
(215) 951-4131

*e-mail or text preferred contact