IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,

    Plaintiff,

v.

JOSHUA DAVID SHAPIRO, et al.,

    Defendants.

Civil Action No. 24–2279

**ORDER**

AND NOW this _____ day of _____, 2024, on consideration of the United States' Motion to Dismiss, and any response, it is ORDERED THAT:

(1)    The United States' motion is GRANTED; and

(2)    All claims against Defendants Merrick Brian Garland and Xavier Becerra are DISMISSED under Federal Rule of Civil Procedure 12(b)(1) without prejudice, because the Court lacks subject matter jurisdiction.

                      BY THE COURT:

                        _____
                        R. BARCLAY SURRICK
                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER,<br><br>        Plaintiff,<br>v.<br><br>JOSHUA DAVID SHAPIRO, et al.,<br><br>        Defendants. | Civil Action No. 24–2279 |

## [ALTERNATE] ORDER

AND NOW this _____ day of _____, 2024, on consideration of the United States' Motion to Dismiss, and any response, it is ORDERED THAT:

    (1)    The United States's motion is GRANTED; and

    (2)    All claims against Defendants Merrick Brian Garland and Xavier Becerra are DISMISSED with prejudice under Federal Rule of Civil Procedure 12(b)(6).

BY THE COURT:

_____
R. BARCLAY SURRICK
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER, | |
| Plaintiff, | |
| v. | Civil Action No. 24–2279 |
| JOSHUA DAVID SHAPIRO, et al., | |
| Defendants. | |

## UNITED STATES' MOTION TO DISMISS

The United States of America, on behalf of Defendant Merrick Brian Garland, in his official capacity as Attorney General, and Defendant Xavier Becerra, in his official capacity as U.S. Secretary of Health and Human Services (collectively, the "United States Defendants"), moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiff Gordon Roy Parker challenges the constitutionality of the Assisted Suicide Funding Restriction Act of 1997, 42 U.S.C. § 14401, *et seq.* (ASFRA), and a Pennsylvania law criminalizing assisted suicide, 18 Pa. C.S. § 2505. Parker argues that: (1) there is a constitutional right to assisted suicide under the Fourteenth Amendment's Due Process and Equal Protection Clauses, under the right to privacy, and under the First and Thirteenth Amendments; and (2) by prohibiting use of federal funds for assisted suicide, ASFRA violates these provisions.

But Parker has not met the necessary Article III standing requirement of showing a causal connection between the injury he alleges—namely, his inability to access physician-assisted suicide in Pennsylvania—and ASFRA's prohibition on the use of federal funds for assisted suicide. This Court therefore lacks subject matter jurisdiction over Parker's claims against the United States Defendants challenging ASFRA, which must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Even if this Court had jurisdiction, Parker's claims against the United States Defendants must still be dismissed under Rule 12(b)(6) for failure to state a cognizable claim.

First, the Fourteenth Amendment claims fail because that amendment does not apply to the federal government. And even if the Court construes Parker's due-process challenge to ASFRA as one under the Due Process Clause of the Fifth Amendment, it must be dismissed because: (1) laws restricting the government from funding the exercise of a fundamental right do not violate that fundamental right; (2) there is no fundamental right or privacy-based right to assisted suicide; and (3) funding restrictions on assisted suicide are rationally related to legitimate ends.

Second, to the extent that Parker purports to bring a Fifth Amendment equal-protection challenge against ASFRA, that claim similarly fails because ASFRA neither implicates a constitutional right nor targets a suspect classification.

Finally, Parker's First and Thirteenth Amendment claims fail because in *Washington v. Glucksberg*, 521 U.S. 702 (1997), the United States Supreme Court foreclosed the existence of any constitutional right to assisted suicide.

As more fully discussed in the accompanying memorandum, the Court should therefore dismiss each of Parker's claims against the United States Defendants.

                                        Respectfully submitted,

                                        JACQUELINE C. ROMERO
                                        United States Attorney

                                        */s/ Mark J. Sherer for GBD*
                                        GREGORY B. DAVID
                                        Assistant United States Attorney
                                        Chief, Civil Division

Dated: August 9, 2024              */s/ Alanna N. Pawlowski*
                                        Alanna N. Pawlowski
                                        Assistant United States Attorney
                                        615 Chestnut Street, Suite 1250
                                        Philadelphia, PA 19106
                                        (215) 861-8651
                                        Alanna.Pawlowski@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER, | |
| Plaintiff, | |
| v. | Civil Action No. 24–2279 |
| JOSHUA DAVID SHAPIRO, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE UNITED STATES' MOTION TO DISMISS**

## I. Introduction

*Pro se* plaintiff Gordon Roy Parker asserts that the Assisted Suicide Funding Restriction Act of 1997, 42 U.S.C. § 14401 *et seq.* (ASFRA), which prohibits using any federal healthcare funding for assisted suicide, and 18 Pa. C.S. § 2505, a Pennsylvania law criminalizing causing or aiding the suicide of another, violate a fundamental right to assisted suicide under the Fourteenth Amendment's Due Process and Equal Protection Clauses, and under the First and Thirteenth Amendments, and he seeks injunctive and declaratory relief. ECF No. 1.

But no such right exists, and Parker's claims against the United States Defendants challenging ASFRA must be dismissed.

First, Parker has not established a causal connection between his alleged injury—his inability to obtain physician-assisted suicide in Pennsylvania—and ASFRA's prohibition on the use of federal funds for assisted suicide, as is necessary for him to establish Article III standing to challenge ASFRA.

Second, even if Parker had standing to challenge ASFRA, he has failed to state a claim: (1) his Fourteenth Amendment due-process claims fail because the Fourteenth Amendment does not apply to the federal government. And even if the Court construes his due process claims as arising under the Fifth Amendment, they still fail because (i) the federal government is not required to subsidize fundamental

rights, (ii) binding precedent, *Washington v. Glucksberg*, 521 U.S. 702 (1997), establishes that assisted suicide is not a fundamental right, and (iii) funding restrictions on assisted suicide are rationally related to legitimate ends. (2) Any equal protection claims likewise fail, because ASFRA's funding restrictions do not implicate a fundamental right, nor do they distinguish based on a suspect classification. (3) *Glucksberg* forecloses the existence of a right to assisted suicide under the First or Thirteenth Amendments.

Accordingly, this Court should dismiss Parker's claims against the United States Defendants under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).

**II.     Factual and Procedural Background**

Parker filed his Complaint on June 3, 2024, ECF No. 1, and on June 10, 2024, he filed a Motion for Preliminary Injunction and Consolidated Trial, ECF No. 6. He served his Complaint and Motion on the United States Attorney's Office on June 10, 2024. As relevant here, Parker names as defendants Attorney General Garland and U.S. Secretary of Health and Human Services Becerra.

Parker alleges that he is terminally ill with end-stage liver disease, with a median prognosis of less than six months to live, due to refractory ascites and anemia. ECF No. ¶ 1. He also alleges that he "suffers from arterial monochromia," which he states has "a life expectancy of six months or less."[1] *Id.*

---

[1] Under Rule of Evidence 201(b)(2), the Court may take judicial notice that "arterial monochromia" is not a condition recognized by reputable medical sources. *See, e.g.*, rarediseases.info.nih.gov/diseases?category=&page=1&letter=&search=arterial%20monochromia; mayoclinic.org/diseases-conditions/search-results?q=%22arterial%20monochromia%22; my.clevelandclinic.org/health/diseases?q=arterial%20monochromia&dFR[type][0]=Diseases. *See, e.g., Happel v. Bishop*, 2024 WL 1508561, at *2 & n.5 (W.D. Pa. Feb. 22, 2024) (collecting cases, taking judicial notice of background medical information from Cleveland Clinic). Instead, "arterial monochromia" appeared in an episode of "The Honeymooners." *See The Honeymooners Season 1 Episodes, Episode 5: A Matter of Life and Death*, TV GUIDE, tvguide.com/tvshows/the-honeymooners/episodes-season-1/1000206641/. *See also Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) (courts may take judicial notice of information from websites "not reasonably subject to dispute." (citing Fed. R. Evid. 201(b))).

Parker takes issue with prohibitions on assisted suicide in Pennsylvania and limitations on it in New Jersey and Vermont, where assisted suicide is available for terminally ill patients. *Id.* ¶¶ 12(h), 14–17. He argues for a broad constitutional right to assisted suicide, available to all persons, "whether or not he is physically or even mentally ill, and even if his judgment is impaired, as long as he is free and functioning in society" and there are no "red flags" of coercion. *Id.* ¶¶ 11(c), (h), 14. He argues that ASFRA's funding restrictions "disable[] the ability of federally-funded medical centers to offer MAID [medical aid in dying], even in states such as Vermont where this is legal" *Id.* ¶ 11(f). He seeks to have suicide declared a fundamental right, and "alternatively, he seeks nothing more than the right to end his life in his home, rather than exercise a woefully innocent 'right' to do so in Vermont." *Id.* ¶ 14.

Parker's Complaint lists six counts: Count I asserts that ASFRA violates the Thirteenth Amendment and his right to privacy and seeks to enjoin all defendants from enforcing ASFRA or laws resulting from it. Count II asserts that 18 Pa. C.S. § 2505 violates the Thirteenth Amendment and his right to privacy and seeks to enjoin all defendants from enforcing laws that violate those rights. Count III asserts First Amendment free-expression violations and seeks to enjoin all defendants from violating that right. Count IV asserts Thirteenth Amendment violations and seeks to enjoin the United States Defendants from violating that right. Count V asserts Fourteenth Amendment Due Process and "personal bodily autonomy" violations and seeks an injunction preventing the United States Defendants from violating those rights. Count VI asserts Constitutional right-to-privacy violations and seeks an injunction preventing the United States Defendants from violating that right, as well as an injunction requiring "any state medical actor to accommodate" his wish to immediately begin the process of assisted suicide. ECF No. 22–48.

3

### III.  Standard of Review

#### A.  Dismissal under Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). A facial challenge to jurisdiction contends that, even accepting the facts alleged in the complaint as true, jurisdiction is not proper. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Without jurisdiction, "the court cannot proceed at all in any cause" and "the only function remaining . . . is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotation omitted). The plaintiff bears the burden of proving jurisdiction exists. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

#### B.  Dismissal under Rule 12(b)(6)

A motion under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion, courts accept all well-pleaded facts as true, in the light most favorable to the plaintiff, but disregard any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although *pro se* litigants are "held to less stringent standards," *U.S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 575 (3d Cir. 1979), they "still must allege sufficient facts in their complaints to support a claim," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### IV.  Argument

The Court should dismiss all of Parker's claims against the United States Defendants for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted. First, Parker's claims against the United States Defendants must be dismissed under Rule 12(b)(1) because Parker lacks standing to challenge ASFRA, as he has not established a causal connection

4

between his alleged injury and ASFRA. Second, even if Parker has pleaded adequate facts to establish standing to challenge ASFRA, his claims for relief under the Fourteenth Amendment Due Process Clause, Fourteenth Amendment Equal Protection Clause, and the First and Thirteenth Amendments are not viable and therefore must be dismissed under Rule 12(b)(6).

### A.   Parker has not established the causal connection between ASFRA and his injury necessary to establish standing.

For a federal court to have jurisdiction over a case, Article III of the Constitution requires that a plaintiff must demonstrate at a minimum that (1) he has suffered a distinct injury that is "actual or imminent, not conjectural or hypothetical"; (2) there is a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action"; and (3) the requested relief will likely redress the injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992) (internal quotations omitted).

ASFRA itself does not prohibit assisted suicide. *See* 42 U.S.C. §§ 14401–14408. General challenges to assisted-suicide prohibitions therefore do not implicate ASFRA if a plaintiff "has not established any basis for his entitlement to federal funds for this purpose." *Calon v. Apfel*, 185 F.3d 873, 873 & n.1 (10th Cir. 1999).

Here, Parker argues that ASFRA "disables the ability of federally-funded medical centers to offer MAID, even in states such as Vermont where this is legal" ECF No. 1, ¶ 11(f).But Parker does not allege that he is entitled to treatment at federally funded medical centers. *Calon*, 185 F.3d at 873 & n.1. He also does not allege that he could access assisted suicide in another state, but for ASFRA's federal funding restrictions. Indeed, based on the allegations in his Complaint, Parker does not seek to commit assisted suicide in Vermont or another state in which it is already legal (except at federally funded providers), but in his home in Philadelphia, Pennsylvania. *Id.* ¶¶ 1, 14. Further, he describes Vermont's own laws permitting

5

assisted suicide as "draconian," "almost as tortuous as no right at all," and "even more blatantly unconstitutional than segregation pre-*Brown*." *Id.* ¶ 14, 16–17. Based on the allegations in his Complaint, therefore, Parker's asserted injury appears to be his inability to access assisted suicide at home in Pennsylvania, caused by 18 Pa. C.S. § 2505, or his frustration with the "draconian" steps required to do so in Vermont, caused by that state's laws. His allegations therefore do not establish the required "causal connection" between ASFRA's funding restrictions and the injury of which he complains. Parker therefore has not established Article III standing to challenge ASFRA, *see Lujan,* 504 U.S. at 560–61, and his claims against the United States Defendants must be dismissed under Rule 12(b)(1).

> **B.    Parker also fails to state any cognizable claims under the Fourteenth Amendment Due Process or Equal Protection Clauses or the First or Thirteenth Amendments.**

Parker argues that ASFRA violates a constitutional right to assisted suicide under the Fourteenth Amendment's Due Process Clause, the Fourteenth Amendment's Equal Protection Clause, and the First and Thirteenth Amendments. But Parker fails to state a cognizable claim under any of these theories.

> **1.    Parker does not state a viable due process claim.**

Parker purports to bring a claim against the United States Defendants based on a violation of the Due Process Clause of the Fourteenth Amendment. ECF No. 1, ¶¶ 41–44. However, that amendment applies only to states, not the federal government. *See* U.S. Const. amend. XIV § 1; *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 800 (3d Cir. 2001); *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954). The Court must therefore dismiss any Fourteenth Amendment claims against the United States Defendants.

To the extent the Court liberally construes Parker's *pro se* complaint as making a Fifth Amendment due process claim, the Court should still dismiss it. The Fifth Amendment's Due Process Clause prohibits the federal government from

6

depriving any person of life, liberty, or property without due process of law. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *B & G Const. Co. v. Dir., Off. of Workers' Comp. Programs*, 662 F.3d 233, 253 (3d Cir. 2011). To establish a violation of substantive due process, a plaintiff must demonstrate government deprivation of a protected interest. *Holland v. Rosen*, 895 F.3d 272, 292 (3d Cir. 2018). When the protected interest is a fundamental right or liberty interest, due process provides "heightened protection against government interference." *Glucksberg*, 521 U.S. at 720. When a challenged government action *does not* implicate a fundamental right, due process requires that the action must be rationally related to a legitimate interest. *See id*. at 728.

Laws restricting the use of government funds for certain activities generally do not violate due-process protections, because "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 507 (1989) (quotation omitted). This is because "the Constitution 'does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.'" *Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 550 (1983) (quoting *Harris v. McRae*, 448 U.S. 297, 318 (1980)). Accordingly, Congress's "decision not to subsidize the exercise of a fundamental right does not infringe the right." *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 212 (2003) (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)). This is true even with healthcare matters, as restrictions on the use of federal funds for certain medical procedures leave a person "with at least the same range of choice . . . as [they] would have had if Congress had chosen to subsidize no health care costs at all." *Rust*, 500 U.S. at 201 (quoting *Harris*, 448 U.S. 297, 317).

The federal action at issue here is the prohibition in ASFRA against any federal healthcare funding being used for assisted suicide. *See* 42 U.S.C. § 14402. Again, ASFRA does not itself prohibit assisted suicide. *See* 42 U.S.C. § 14401–08; *Calon*, 185 F.3d at 873 & n.1. Because ASFRA only declines to provide federal funding for assisted suicide, it does not implicate any right—though none exists—to assisted suicide, and Parker's claims that ASFRA violates a fundamental right to assisted suicide therefore fail.

Further, as established by Supreme Court precedent, "the asserted 'right' to assistance in committing suicide is not a fundamental liberty interest protected by the Due Process Clause." *Glucksberg*, 521 U.S. at 728; *Vacco v. Quill*, 521 U.S. 793, 799–800 (1997) (stating in equal protection case that New York law prohibiting assisted suicide did not restrict a fundamental right); *see also Soos v. McDonough*, 2024 WL 3517846, *1 (D.D.C. July 3, 2024) (stating *Glucksberg's* holding that "there is no constitutionally protected right to assisted suicide" remains valid); *Mahorner v. Fla.*, 2008 WL 2756481, *6–7 (M.D. Fla. July 14, 2008) (discussing *Glucksberg* and *Vacco* and concluding no Fourteenth Amendment right to assisted suicide, particularly for non-terminally ill plaintiff seeking assistance in ending his life due to "diminished mental capacity").

The Supreme Court in *Glucksberg* undertook a substantive-due-process analysis to determine if a Constitutional right to assisted suicide existed, and it concluded it did not, because receiving assistance in committing suicide is not "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Id.* at 720-21, 723 (internal quotations and citations omitted).[2] The

---

[2] While the Supreme Court's analysis of fundaments rights under the Fourteenth Amendment has changed to some extent since *Glucksberg*, including in its decision in *Obergefell v. Hodges*, 576 U.S. 644, 671 (2015), the Court has not called into question its holding in *Glucksberg*. Instead, the Court stated in *Obergefell* that the

8

Court rejected broader formulations of the asserted right, suggested by the plaintiffs, such as "the right to choose a humane, dignified death" or "the liberty to shape death." *Id.* at 722.

*Glucksberg* also establishes that there is no Constitutional privacy-based right to assisted suicide, contrary to Parker's argument that "suicide is a fundamental human privacy right." (ECF No. 1, ¶ 14). The Supreme Court in *Glucksberg* considered its caselaw on Constitutional rights to privacy, including in *Pierce v. Society of Sisters,* 268 U.S. 510 (1925) (right to marital privacy), *Griswold v. Connecticut,* 381 U.S. 479 (1965) (right to use contraception), and *Eisenstadt v. Baird,* 405 U.S. 438, (1972) (right to bodily integrity). *See* 521 U.S. at 720. The Court nonetheless concluded that there is no fundamental liberty interest or "right" to assisted suicide protected by the Due Process Clause. *Id.* at 728. This holding necessitates that no such right stems from a Constitutional right to privacy.

Because assisted suicide is not a fundamental right, laws restricting it need only be rationally related to legitimate government interests. *Id.* Laws prohibiting assisted suicide meet this standard. *Id.* at 735. The Supreme Court has identified that prohibitions on assisted suicide are rationally related to the "valid and important public interests" of preserving life; preventing suicide; preventing intentional killing; protecting vulnerable individuals from abuse, indifference, mistakes, prejudice, and psychological or financial pressure to end their lives; protecting the integrity and ethics of the medical profession; and avoiding a possible slide towards euthanasia, and that those interests "*easily satisfy*" the requirement that the legislation bear a rational relation to some legitimate end. *Vacco*, 521 U.S.

---

circumscribed manner in which it defined fundamental rights in *Glucksberg*, with primary reference to historical practices, may have been appropriate for the asserted right at issue there, physician-assisted suicide. 576 U.S. at 671.

9

at 808–09 (emphasis added) (listing interests); *Glucksberg*, 521 U.S. at 728–35 (discussing these interests in depth).

Accordingly, under binding Supreme Court precedent in *Glucksberg*, and as reiterated by federal courts since, there is no Constitutional right to assisted suicide, and laws prohibiting it are rationally related to legitimate government interests. So too is ASFRA rationally related to these important interests. Therefore, Parker's claims that ASFRA violates his due-process or privacy-based rights must fail, and the Court should dismiss these claims against the United States Defendants.

### 2. Parker does not state a viable equal protection claim.

Parker refers to the Equal Protection Clause of the Fourteenth Amendment in the introduction of his Complaint and in discussing jurisdiction and venue (*see* ECF No. 1, para. 8(c-d)), but this claim does not appear in his enumerated counts. To the extent Parker may be bringing an equal-protection challenge, it appears directed at state-level restrictions and the varying permissibility of assisted suicide across states, rather than at ASFRA, which restricts federal funding for assisted suicide regardless of state. In addition, any Fourteenth Amendment equal protection claim challenging ASFRA would fail because, as discussed above, the Fourteenth Amendment is inapplicable to the federal government.

Nonetheless, if the Court construe's Parker's Complaint as bringing an equal protection claim against the United States Defendants under the Fifth Amendment, the Due Process Clause of which incorporates a guarantee of equal protection, *see Harris*, 448 U.S. at 322, *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316–17 (3d Cir. 2001), the claim still fails, and the Court should dismiss it.

The guarantee of equal protection "is not a source of substantive rights or liberties." *Harris*, 448 U.S. at 322. Instead, it protects against differing application of laws based on a "suspect" classification. *Id.* The equal protection analysis under

the Fourteenth and Fifth Amendments is the same. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001).

Federal funding restrictions on medical procedures do not themselves raise equal-protection issues based on a suspect classification. *Harris*, 448 U.S. at 323 (upholding prohibition on federal reimbursement under Medicaid for abortion). In addition, the Supreme Court has rejected equal-protection challenges to assisted-suicide restrictions, concluding they do not implicate a suspect classification by virtue of prohibiting assisted suicide while allowing refusal of life-saving medical treatment. *See Vacco*, 521 U.S. at 797–99 The Supreme Court in *Vacco* made clear that a New York law prohibiting assisted suicide *did not* implicate a fundamental right and *did not* target a suspect class. *Id.* at 799–800.

Here, Parker has not, and cannot, plead a viable Fifth Amendment equal protection claim related to ASFRA. First, as discussed above, there is no right or liberty to assisted suicide protected by the Constitution. *See Glucksberg*, 521 U.S. at 720-21. Second, Parker has also not identified any suspect class implicated by ASFRA, nor is any such classification apparent or implicated by laws restricting assisted suicide. *See Vacco*, 521 U.S. at 799–800. Lastly, the numerous legitimate interests that the Supreme Court has long recognized in restricting assisted suicide, *see Vacco*, 521 U.S. at 808–09; *Glucksberg*, 521 U.S. at 728–35, are rationally related to ASFRA's prohibition on using federal funds to assist in suicide. Accordingly, this Court must dismiss any equal protection claim Parker may be bringing against the United States Defendants.

### 3. Parker does not state viable First or Thirteenth Amendment claims.

Parker argues that ASFRA violates his First Amendment right to freedom of expression, ECF No. 1 ¶¶ 33–36, and his Thirteenth Amendment right to be free from involuntary servitude, *id.* ¶¶ 37–40. Both these claims must fail.

11

In *Glucksberg*, the Supreme Court considered whether there is a constitutional right to assisted suicide. 521 U.S. at 719–20. It acknowledged that the Due Process Clause of the Fourteenth Amendment, under which it was probing for the existence of a right to assisted suicide, protects "the specific freedoms protected by the Bill of Rights" as well as additional "liberty" rights. *Id.* at 720. In concluding that there is no right to assistance in committing suicide protected by the Due Process Clause, *see id.* at 728, the Court concluded that there is *no* constitutional basis for a right to assisted suicide. The Court should therefore dismiss Parker's First and Thirteenth Amendment claims.

Further, the First Amendment right to freedom of expression protects "the freedom to think as you will and to speak as you think." *303 Creative LLC v. Elenis*, 600 U.S. 570, 584 (2023) (quotation omitted). While this protection extends to expressive conduct, Parker seeks not the right to commit suicide himself, or to express his views on assisted suicide, but rather to receive assistance in carrying out suicide. More specifically, as to his claims against the United States Defendants, he seeks federal funding in receiving that assistance. Parker's allegations regarding his "right" to assisted suicide simply do not fit into the type of expression encompassed by the First Amendment.

Similarly, Parker essentially argues that by virtue of not having access to federally funded assisted suicide, his continued life itself constitutes involuntary servitude in violation of the Thirteenth Amendment. But the prohibition on involuntary servitude plainly does not encompass a guarantee of access to assisted suicide.

In *Griffin v. Breckenridge*, the Supreme Court described the historical basis for the Thirteenth Amendment, which gave Congress the "power . . . rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." 403 U.S. 88, 105 (1971)

12

(quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440 (1968)). Given this historical context, Parker cannot show that the Thirteenth Amendment provides for the right to end one's life with the assistance of another. Because ASFRA does not implicate the constitutional prohibition against involuntary servitude, Parker's Thirteenth Amendment claim must fail. Accordingly, the Court should dismiss Parker's First and Thirteenth Amendment claims against the United States.

### C. The Court should not grant Parker leave to amend, as amendment would be futile.

When a *pro se* plaintiff alleges civil rights violations, courts should grant them leave to amend—unless it would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Here, amendment would be futile. In this case, Parker makes a legal challenge to ASFRA on the purported basis that there is a constitutional right to assisted suicide, even for non-terminally ill individuals. There are no additional facts he could plead and no additional arguments he could make in an amended complaint that would change the settled Supreme Court precedent holding that federal funds need not be made available for the exercise of fundamental rights and that there is no constitutional right to assisted suicide. Accordingly, amendment is futile, and this Court should dismiss Parker's Complaint without leave to amend.

## V. Conclusion

Parker's claims against the United States Defendants must be dismissed for lack of Article III standing, because he has not established the causal connection needed between his injury and ASFRA's funding restrictions. Further, even if Parker has standing to challenge ASFRA, his claims fail. His due-process claims are not viable because the federal government is not required to subsidize fundamental rights, and, under binding Supreme Court precedent, there is no fundamental or privacy-based right to assisted suicide. Any equal protection claim against ASFRA

13

fails because ASFRA's funding restrictions do not implicate a fundamental right or distinguish based on a suspect classification. And his First and Thirteenth Amendment claims fail because *Glucksberg* foreclosed any constitutional right to assisted suicide. Accordingly, each of Parker's claims against the United States Defendants challenging ASFRA, Counts I through VI, must be dismissed under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, under Rule 12(b)(6).

                                    Respectfully submitted,

                                    JACQUELINE C. ROMERO
                                    United States Attorney

                                  */s/ Mark J. Sherer for GBD*
                                    GREGORY B. DAVID
                                    Assistant United States Attorney
                                    Chief, Civil Division

Dated: August 9, 2024            */s/ Alanna N. Pawlowski*
                                    Alanna N. Pawlowski
                                    Assistant United States Attorney
                                    615 Chestnut Street, Suite 1250
                                    Philadelphia, PA 19106
                                    (215) 861-8651
                                    Alanna.Pawlowski@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this date I caused a copy of the United States' Motion to Dismiss to be filed via ECF with the Clerk of Court, and I caused a copy to be sent by first-class, U.S. mail, postage prepaid to:

Gordon Roy Parker
315 South Broad Street, #0106
Philadelphia, PA 19107
*Pro Se Plaintiff*


Dated:  August 9, 2024                    */s/ Alanna N. Pawlowski*
                                                     ALANNA N. PAWLOWSKI
                                                   Assistant United States Attorney