IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REC'D AUG 15 2024

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>　　　　　　　　　Plaintiff<br><br>v.<br><br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al.<br><br>　　　　　　　　　Defendants | Case No: 2:24-cv-02279-RBS |

**PLAINTIFF'S RESPONSE TO DEFENDANTS
GARLAND AND BECERRA'S MOTION TO DISMISS**

Plaintiff Gordon Roy Parker, in the above-styled action, submits this response to the United States Defendants' (Garland and Becerra's) Motion To Dismiss.

**RESPONSE TO MOTION TO DISMISS**

Defendants are moving to dismiss this case under Federal Rules 12(b)(1), claiming Plaintiff lacks Article III standing to sue, and 12(b)(6), for failure to state a claim.[1]

　　1.　Plaintiff does have standing under the Due Process Clause, perhaps via the Fifth Amendment as noted in the motion (p2.):

　　　　a. The Government's claim that "laws restricting the government from funding the exercise of a fundamental right do not violate that fundamental right;" (response, p.1, ¶1) is the right answer to the wrong question: Plaintiff is not arguing entitlement to funding for MAID, but that the ASFRA violates his constitutional right to access MAID, not to have it paid for.

---

[1] Defendants, unlike the Commonwealth defendants, noted in its memorandum (p. 2) that "arterial monochromia," which Plaintiff used as a placeholder to represent *any* terminal illness (and to see who was paying attention), references fiction.

      b. Plaintiff is challenging the government's claim that "there is no fundamental right to assisted-suicide" by noting that:

      1.    The Thirteenth Amendment prohibits involuntary servitude, forcing Plaintiff to live against his will, making him government property, and robbing him of assets after death via the Estate Recovery Act (Plaintiff owns considerable intellectual property)l.

      2.    No fundamental right to assisted-suicide need exist for the Due Process and Equal Protection Claims, as this has to do with inequity in state laws and its impact on commerce and due process rather than with establishing MAID as a fundamental right.

      3.    The "rational basis" test would not apply to a suspect class where life and death is at stake.

2.    Defendant's 12(b)(6) claims fail because the facts support Plaintiff's claims, while the 12(b)(1) motion fails because of the constitutional right to assisted suicide, particularly under the Thirteenth Amendment, directly "implicates a constitutional right."

For the reasons set forth here in the attached Memorandum of Law, the instant motion should be **denied**.

This the 15th day of August, 2024.

 

_____
**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131
*e-mail or text preferred contact

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | |
|---|---|
| GORDON ROY PARKER,<br><br>                           Plaintiff<br>v.<br><br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al.<br><br>                          Defendants | Case No: 2:24-cv-02279-RBS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE
TO COMMONWEALTH DEFENDANTS MOTION TO DISMISS**

Plaintiff submits this memorandum of law in support of his response to the instant motion.

## I. INTRODUCTION

If Plaintiff lived in Vermont, New Jersey, Oregon, or any of the other states which permit medical aid in dying (MAID), he would either already be dead, or have the option to end his life on his own terms. Instead, he is literally *government property,* living life no longer for himself, but to serve the interests of the state:



While Plaintiff makes due process and equal protection arguments rooted in the Fifth and Fourteenth Amendment, neither of those require assisted suicide to be a fundamental constitutional right; instead, Plaintiff is claiming that if *some* states allow MAID, then all must do so, since anything

less runs afoul of the Equal Protection and Due Process clauses.  For those claims, the Commonwealth Defendants are the primary actors.  To that extent, the ASFRA violates these rights by allowing states to enact MAID in a manner that cannot avoid violating Plaintiff's Equal Protection and Due Process rights.

By contrast, and in addition to the Fourteenth and Fifth Amendment claims, it is the **_Thirteenth_** Amendment claim, in which Plaintiff asserts a fundamental and absolute right to suicide, regardless of one's life situation, that is central to the case against the Federal defendants (Garland and Becerra).  The Court should also note that **_Plaintiff_** is breaking no law if he ends his life; criminality is imputed only if he seeks medical or other (caregiver) assistance, even for states like Vermont and Oregon, where MAID is legal for nonresidents, since those who assist him in Pennsylvania face potential criminal liability.

### Whose Life Is It Anyway?

This 1981 film dealt with similar issues presented here:



Richard Dreyfuss played Ken Harrison, a sculptor paralyzed from the neck down, who sued his hospital for the right to end his life on his own terms.  In fiction, the Plaintiff prevailed.  In reality, this Plaintiff is forced to endure _**four**_ terminal illnesses: End-Stage Liver Disease (ESLD), Type II diabetes, Stage III COPD, and Non-Small-Cell Lung Cancer.  A reasonable physician would give Plaintiff six or fewer months to live, though this is not germane to his Thirteenth-Amendment claim.  Any order permitting suicide within that time frame can also be made to take effect once his prognosis satisfies this requirement.

Plaintiff is a semi-invalid, able to walk short distances when he has to, but otherwise unable to live independently without a caregiver (he receives two hours a day of paid in-home assistance and

otherwise relies on volunteer help). For the past two months, he has had an average of two or more appointments each week, with an increasing array of specialists, and must go increasingly discomforting and painful procedures, especially with his newly-diagnosed lung cancer, for which he is not a candidate for surgery due to his other conditions.

Put simply, *any* individual, regardless of life situation, who is forced to continue existing against his or her will, is an indentured servant in violation of the Thirteenth Amendment. Plaintiff also sees no law preventing him from simply killing himself, as long as he does not tell anyone or seek assistance, as no law exists which prohibits this behavior. This too is a violation of his Equal Protection and Due Process rights, as they prevent the exercise of his Thirteenth Amendment right to be free of involuntary servitude.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In their Memorandum (pp. 2-3), Defendants outline the history of this case, which seems substantively correct, though with a *pro se* pleading, liberal construction may expand the issues presented before this court.

## III.    LEGAL STANDARD

### A.    Liberal Construction Of Pro Se Pleadings

In <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the Court held that pro se pleadings are to be held to less stringent standards than those drafted by attorneys. This leniency is critical to ensure that individuals who lack formal legal training are not unduly prejudiced by technicalities that may obscure the merits of their claims.

Liberal construction requires the Court to interpret the Plaintiff's pleadings in a manner that seeks to understand and address the substantive issues raised, even if the form or articulation of the claims is imperfect. This principle allows the Court to consider the essential elements and underlying

3

facts of the Plaintiff's case, rather than focusing on procedural deficiencies. For instance, factual allegations in pro se complaints should be treated as true and construed in the light most favorable to the Plaintiff, as stated in Estelle v. Gamble, 429 U.S. 97 (1976).

Moreover, ***the Third Circuit has consistently reinforced the need for such leniency***, recognizing that pro se litigants, by virtue of their lack of legal training, may not comply with the technical rules of pleading and procedure. In Higgs v. Atty. Gen., 655 F.3d 333 (3d Cir. 2011), the Court emphasized that pro se filings must be construed liberally to avoid denying access to justice based on procedural missteps.

### B.     Federal Rules 12(b)(6) and 12(b)(1)

#### 1.     Federal Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, as established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and further clarified by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

#### 2.     Federal Rule 12(b)(1)

Federal Rule 12(b)(1) permits a party to challenge the court's subject matter jurisdiction over the case. A court must dismiss an action under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate the case. The burden of proving jurisdiction rests on the party asserting it, typically the plaintiff. In evaluating a Rule 12(b)(1) motion, the court may consider matters

outside the pleadings, including affidavits and other evidence, to determine whether it has jurisdiction. Unlike a Rule 12(b)(6) motion, the court is not required to presume the truthfulness of the plaintiff's allegations when deciding a Rule 12(b)(1) motion.

## IV. ARGUMENT

### A. A Causal Connection Between ASFRA And The Injury Exists

#### 1. ASFRA Impedes Plaintiff's Constitutional Rights To Due Process, And Equal Protection.

Defendants argue, on page 5, ¶A of their Memorandum, that:

ASFRA restricts medical providers and their institutions who receive federal funds from offering MAID. This includes most teaching hospitals, the best equipped to handle Plaintiff and his many conditions. Plaintiff is currently a patient at Temple Hospital, who would be prohibited from offering MAID due to the ASFRA even if doing so were legal in the Commonwealth (which it would be if the other claims prevail).

ASFRA itself does not prohibit assisted suicide. See 42 U.S.C. §§ 14401 14408. General challenges to assisted-suicide prohibitions therefore do not implicate ASFRA if a plaintiff "has not established any basis for his entitlement to federal funds for this purpose." Calon v. Apfel, 185 F.3d 873, 873 & n.1 (10th Cir. 1999).

Parker does not allege that he is entitled to treatment at federally funded medical centers. Calon, 185 F.3d at 873 & n.1. He also does not allege that he could access assisted suicide in another state, but for ASFRA's federal funding restrictions. Indeed, based on the allegations in his Complaint, Parker does not seek to commit assisted suicide in Vermont or another state in which it is already legal (except at federally funded providers), but in his home in Philadelphia, Pennsylvania. Id. ¶¶ 1, 14.

Based on the allegations in his Complaint, therefore, Parker's asserted injury appears to be his inability to access assisted suicide at home in Pennsylvania, caused by 18 Pa. C.S. § 2505, or his frustration with the "draconian" steps required to do so in Vermont, caused by that state's laws. His allegations therefore do not establish the required "causal connection" between ASFRA's funding restrictions and the injury of which he complains.

That ***Plaintiff could walk to California if the government barred him from flying*** would not mitigate the constitutional harm of denying him the right to travel. ASFRA is but one of many unconstitutional inhibitors to Plaintiff's desire to end it all. Moreover, since there are no laws against actually __*committting*__ suicide, as long as one does not seek assistance, Plaintiff could also mitigate his damages that way (obviously he chooses to fight in court instead).

5

Plaintiff has chosen to sue in Philadelphia rather than travel to Oregon, Vermont, or another state to end his life, not because he wants to, but because he *has* to: he lacks the resources to move to New Jersey and establish residence, or to use MAID in Oregon and Vermont, due to lack of housing in those states; if he had unlimited resources, he would have left Pennsylvania months ago.

    **2.   ASFRA Violates Plaintiff's Thirteenth Amendment Rights**

Plaintiff's Thirteenth Amendment claim asserts an absolute, fundamental right to suicide which renders *any* attempt by the government to interfere with that right a violation of his Thirteenth Amendment rights.

**B.   Plaintiff's Constitutional Claims Are Valid.**

    **1.   The Due Process Claim Is Valid.**

        **a.   The Due Process Claim Is Also A Fifth-Amendment Claim.**

Since the Complaint could easily be amended to argue a Fifth-Amendment due process claim, that claim should survive, as it applies to the federal government. Whether or not the Fourteenth-Amendment claims apply to the Federal defendants is not substantive, as their constitutionality will still have to be ruled upon with regard to the Commonwealth Defendants; indeed, every named Defendant is a figurehead of sorts, in that the case is actually against the laws themselves. Unlike money, which can be sued itself, statutes do not work that way.

        **b.   Plaintiff Is Not Seeking Federal Funds**

Defendants argue in their Memorandum (p.7, ¶ A1) that:

> Laws restricting the use of government funds for certain activities generally do not violate due-process protections, because "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Webster v. Reprod. Health Servs., 492 U.S. 490, 507 (1989) (quotation omitted).
>
> This is because "the Constitution 'does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.'" Regan v. Tax'n with

6

>Representation of Wash., 461 U.S. 540, 550 (1983) (quoting Harris v. McRae, 448 U.S. 297, 318 (1980)). Accordingly, Congress's "decision not to subsidize the exercise of a fundamental right does not infringe the right." United States v. Am. Libr. Ass'n, Inc., 539 U.S. 194, 212 (2003) (quoting Rust v. Sullivan, 500 U.S. 173, 193 (1991)). This is true even with healthcare matters, as restrictions on the use of federal funds for certain medical procedures leave a person "with at least the same range of choice . . . as [they] would have had if Congress had chosen to subsidize no health care costs at all." Rust, 500 U.S. at 201 (quoting Harris, 448 U.S. 297, 317).

The impressive citations above give the right answer to the wrong question: Plaintiff is not asserting a constitutional right to *funding*, but to MAID itself, under the First, Fifth, Thirteenth, and Fourteenth Amendments, but primarily the Thirteenth. This Court needs to rule on one simple issue: ***is or is not Plaintiff government property? Is he or is he not a slave?*** While the other Amendments apply as well, it is this question which burns: are we truly free or not? If not, then Plaintiff is living for the state and not for himself. Why not go all the way and have him pick cotton, or harvest his organs?

    c.    <u>**Washington v. Glucksberg Did Not Address The Thirteenth Amendment**</u>

Defendants hang their hat on <u>Washington v. Glucksberg</u>, 521 U.S. 702 (1997):

>Further, as established by Supreme Court precedent, "the asserted 'right' to assistance in committing suicide ***is not a fundamental liberty interest protected by the Due Process Clause***." Glucksberg, 521 U.S. at 728; Vacco v. Quill, 521 U.S. 793, 799–800 (1997) (stating in equal protection case that New York law prohibiting assisted suicide did not restrict a fundamental right); see also Soos v. McDonough, 2024 WL 3517846, *1 (D.D.C. July 3, 2024) (stating Glucksberg's holding that "there is no constitutionally protected right to assisted suicide" remains valid); Mahorner v. Fla., 2008 WL 2756481, *6–7 (M.D. Fla. July 14, 2008) (discussing Glucksberg and Vacco and concluding no Fourteenth Amendment right to assisted suicide, particularly for non-terminally ill plaintiff seeking assistance in ending his life due to "diminished mental capacity"). (Memo, p. 8, ¶ B 1).

Even if this court does not overturn Glucksberg on Due Process or Equal Protection grounds (as will be heard against the Commonwealth Defendants), that decision considered only the Fourteenth Amendment and not the ***Thirteenth Amendment***, which prohibits indentured servitude. This includes, but is in no way limited to, the wage theft inherent in slavery, but applies also to ***life itself*** when an individual no longer wishes to live it.

7

It is ***impossible*** for the government to assert a compelling interest in keeping Plaintiff alive against his will that does not constitute ***prima facie*** slavery. This Court may very well rule against this argument, but it cannot do so without branding Plaintiff a slave, as surely as if they had used a branding iron. This is exactly what the Thirteenth Amendment was designed to prevent.

Moreover, by not passing a single law against suicide itself, but merely assisting it, the government has, by omission, already given this right to Plaintiff. If nothing else, it is in the public interest for him to exercise this right in a humane manner which does not threaten public safety, as it would if Plaintiff were instead to jump off a building or leap in front of a SEPTA train during rush hour at City Hall, as many have done.

2. **The Equal Protection Claim Is Valid.**

While Plaintiff did not explicitly state "equal protection" in his "Fourteenth Amendment" claims, liberal construction and his ability to cure this by Amendment should prevail.

The ASFRA violates the Equal Protection Clause because it denies patients of medical research centers the same accessibility to MAID as those who are non-patients. Defendants argue (Memo, pp. 10-11, ¶ B(2)) that:

> The guarantee of equal protection "is not a source of substantive rights or liberties." Harris, 448 U.S. at 322. Instead, it protects against differing application of laws based on a "suspect" classification. Id. The equal protection analysis under the Fourteenth and Fifth Amendments is the same. Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975); Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001).

Plaintiff, or anyone terminally ill with "arterial monochromia," is disabled, which is a suspect class. The remainder of Defendant's arguments are rooted in Glucksberg, which did not address his Thirteenth Amendment claims, and which, if unconstitutional, would not control here.

8

3.  **Plaintiff's First And Thirteenth Amendment Claims Are Valid.**

Kathy Change (a pseudonym) was an activist who committed suicide on the UPenn campus by self-immolation as a form of protest, and certainly an expression of her First Amendment rights. Prohibiting others from assisting her, particularly where federal funds are involved, violate the First Amendment as they impede this form of expression. This, however, is secondary to the *Thirteenth* Amendment claim that requiring Plaintiff to live against his will, or to commit suicide without assistance and without regard to public safety, constitutes involuntary servitude.

Defendants argue, on p. 12 of their motion (¶ B(3)), that:

> Further, the First Amendment right to freedom of expression protects "the freedom to think as you will and to speak as you think." 303 Creative LLC v. Elenis, 600 U.S. 570, 584 (2023) (quotation omitted). While this protection extends to expressive conduct, Parker seeks not the right to commit suicide himself, or to express his views on assisted suicide, but rather to receive assistance in carrying out suicide. More specifically, as to his claims against the United States Defendants, he seeks federal funding in receiving that assistance. Parker's allegations regarding his "right" to assisted suicide simply do not fit into the type of expression encompassed by the First Amendment.

Plaintiff seeks not federal funding, but a finding that ASFRA is unconstitutional. While *Plaintiff already has the right to commit suicide*, as no law prohibits it, the laws against MAID impede his exercise of this right, by requiring him to do so in a manner dangerous to himself and the public at large, who also has a right to life which is impeded, and from even discussing such intent, as this is grounds for involuntary psychiatric hospitalization.

Defendants also argue, (id) that:

> Similarly, Parker essentially argues that by virtue of not having access to federally funded assisted suicide, his continued life itself constitutes involuntary servitude in violation of the Thirteenth Amendment. But the prohibition on involuntary servitude plainly does not encompass a guarantee of access to assisted suicide.

Plaintiff is not asserting a Thirteenth Amendment right to federal funding for assisted suicide, but rather a ruling that any law restricting MAID violates his absolute, fundamental right under the Thirteenth Amendment to end his life on his own terms, and to live free of involuntary servitude.

9

C.  **To The Extent Necessary, Plaintiff Should Be Granted Leave To Amend.**

Certain claimed deficiencies in the Complaint regarding which amendments were pled can be cured by amendment to the Complaint, amendments which would not be futile. Rulings on substantive constitutional issues will be appealed by either side, for *trial de novo* in the Third Circuit, regardless.

## IV.  CONCLUSION

For the reasons set forth hereinabove, the instant motion should be **denied.** An appropriate form of order is attached.

This the 15th day of August, 2024.

*[signature]*

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131
*e-mail or text preferred contact

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>                              Plaintiff<br>         v.<br><br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al.<br><br>                              Defendants | **Case No: 2:24-cv-02279-RBS** |

## <u>ORDER</u>

**AND NOW,** this ___th day of August, 2024, in consideration of The Federal Defendants' Motion To Dismiss, and all replies and responses, the motion is **denied.**

                                                                                              _____
                                                                                              **J.**

# IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>        Plaintiff<br>v.<br><br>Joshua David Shapiro, in his official capacity as Governor of Pennsylvania, et al.<br><br>        Defendants | **Case No: 2:24-cv-02279-RBS** |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, attest and certify that I have caused to be served, on this date, by regular mail, a copy of **Plaintiff's Response To Federal Defendants'** Motion To Dismiss, on the following Defendants:

Joshua David Shapiro
Governor of Pennsylvania
Office of General Council
333 Market Street, 17th Floor
Harrisburg, PA 17101

Debra L. Bogen
Acting Secretary of Health
for the Commonwealth of Pennsylvania
Office of General Council
333 Market Street, 17th Floor
Harrisburg, PA 17101

Laurence Samuel Krasner
District Attorney of Philadelphia
Three South Penn Square
Philadelphia, PA 19107

Merrick Brian Garland
Attorney General of The United States
US Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Michelle A. Henry
Attorney General of Pennsylvania
393 Market Street
Harrisburg, PA 17101

Xavier Bercerra
United States Secretary for
Health and Human Services
200 Independence Avenue S.W.
Washington, DC 20201

This the 15th day of August, 2024.

*[signature]*

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA 19107
gordonroyparker@gmail.com
(215) 951-4131
*e-mail or text preferred contact