IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER : | |
| : | |
| v. : | No. 24-cv-2279 |
| : | |
| JOSHUA DAVID SHAPIRO, MICHELLE : | |
| HENRY, DEBORAH L. BOGEN, LARRY : | |
| KRASNER, AND MERRICK : | |
| BRIAN GARLAND : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                   **MARCH 31, 2025**

Decisions related to the manner and timing of one's death are among the most intimate choices that individuals will encounter. Commensurate with the gravity of this issue, the topics of assisted suicide and death with dignity have remained at the forefront of national and state-level debate for decades. Ten states currently have laws permitting medical aid in dying (MAID) under some set of specified criteria.[1] For example, New Jersey legalized physician-assisted suicide for residents, with safeguards to ensure that only competent, terminally ill individuals will receive that assistance, with informed consent, administered by a qualified physician. *See* N.J. STAT. ANN. § 26:16-1, *et seq.* In Pennsylvania medical aid in dying remains illegal; however, in 2023 two bills were introduced that would create a legal framework like New Jersey's if enacted. *See* Pa. House Bill No. 543 (2023); Pa. Senate Bill No. 816 (2023).

---

[1] "There are eleven jurisdictions in the United States that permit medical aid in dying. Listed chronologically by year of initial authorization, they are as follows: Oregon (1994); Washington (2008); Montana (2009); Vermont (2013); California (2015); Colorado (2016); Washington, D.C. (2017); Hawaii (2018); New Jersey (2019); Maine (2019); and New Mexico (2021)." *Govatos v. Murphy*, No. 23-cv-12601 (RMB/EAP), 2024 WL 4224629, at *24 n.3 (D.N.J. Sept. 18, 2024) (citing *States Where Medical Aid in Dying Is Authorized*, Compassion & Choices, https://compassionandchoices.org/resource/states-or-territories-where-medical-aid-in-dying-is-authorized/ [https://perma.cc/HB8L-HMF3] (last visited Aug. 19, 2024)).

1

On June 3, 2024, Parker filed a *pro se* Complaint claiming that state and federal restrictions related to medical aid in dying are unconstitutional under the First, Thirteenth, and Fourteenth Amendments of the Constitution. Specifically, Plaintiff's Complaint challenges Pennsylvania's law criminalizing assisted suicide, 18 PA. CONS. STAT. § 2505 ("Section 2505"), and the federal Assisted Suicide Funding Restriction Act of 1997, 42 U.S.C. § 14401, *et seq.* ("ASFRA"). Plaintiff's Complaint also takes issue with restrictions in Vermont and New Jersey, where medical aid in dying is legal if certain safeguards and conditions are met.

On June 10, 2024, Parker filed a Motion for Preliminary Injunction and Consolidated Trial Pursuant to Federal Rule of Civil Procedure 65. (ECF No. 6.) All Defendants filed Motions to Dismiss the Complaint. Defendant Larry Krasner filed a Motion to Dismiss on July 1, 2024 (ECF No. 8), Defendants Pennsylvania Governor Joshua David Shapiro, Attorney General Michelle Henry, and Secretary of Health Deborah L. Bogen (the "Commonwealth Defendants") filed a Motion to Dismiss on July 19, 2024 (ECF No. 17), and Defendant Merrick Garland filed a Motion to Dismiss on August 9, 2024 (ECF No. 19). Plaintiff's Motion for a Preliminary Injunction and Consolidated Trial and Defendants' Motions to Dismiss have been fully briefed and are ripe for disposition.

The allegations in Plaintiff's Complaint do not establish a basis for this Court to interfere with the ongoing legislative process on the issues of assisted suicide and death with dignity. *See Washington v. Glucksberg*, 521 U.S. 702, 737 (1997) ("the challenging task of crafting appropriate procedures for safeguarding liberty interests is entrusted to the 'laboratory' of the States in the first instance." (O'Connor, J., concurring) (quoting *Cruzan* v. *Director, Mo. Dept. of Health,* 497 U. S. 261, 292 (1990))). Since this assessment implicates what personal interests may be cognizable under the Constitution, we focus on the narrow issues and specific facts before the Court—in

deference to the benefits of our common law tradition. As Justice Souter noted in concurrence in *Glucksberg*, common law "is suspicious of the all-or-nothing analysis" and instead "tends to pay respect instead to detail, seeking to understand old principles afresh by new examples and new counterexamples." *Id.* at 770 (Souter, J., concurring).

For the following reasons, Defendants' Motions to Dismiss will be granted, Plaintiff's Motion for Preliminary Injunction and Consolidated Trial will be denied, and Plaintiff's Complaint will be dismissed with prejudice.

I.     **FACTUAL BACKGROUND**

Parker alleges that he is terminally ill with end-stage liver disease due to refractory ascites and anemia. (Compl. ¶ 1.) Parker further claims he is facing "rapid deterioration of functionality, kidney failure, …, [an] inability to care for himself at all, excruciating, chronic pain, and ultimately total organ failure leading to a painful and certain death." (Pr. Inj. Mot., ECF No. 6, at 2.) Although Parker claims that he has a median prognosis of less than six months to live, he concedes that no doctors have been willing to confirm this prognosis. (*See id.* at 1 ("Plaintiff's doctors are reticent to declare he has six months to live . . .")) Parker has not alleged that he has been certified as terminally ill by a physician, or that a physician has expressed a willingness to provide medical aid in dying.

Parker challenges the ASFRA's federal funding restrictions, which he claims "disable[] the ability of federally-funded medical centers to offer [medical aid in dying]," (*Id.* ¶ 11(f)), and Pennsylvania's prohibition on assisted suicide.[2] (Compl. at ¶¶ 11-12, 14–17.) He also argues for

---

[2] Parker also takes issue with the limitations placed on medical aid in dying under the laws in New Jersey and Vermont. Although Parker suggests that the restrictions in New Jersey's and Vermont's laws regulating assisted suicide are unconstitutional, he fails to name any enforcement authorities from New Jersey or Vermont as defendants, and he has not pled that he has plans to seek medical aid in dying in these states. Therefore, Plaintiff lacks standing to challenge the laws legalizing medical aid in dying in New Jersey and Vermont. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992) (setting forth requirements

3

a broad constitutional right to assisted suicide, available to all persons, "whether or not he is physically or even mentally ill, and even if his judgment is impaired, as long as he is free and functioning in society" and there are no "red flags" of coercion. (*Id.* ¶¶ 11(c), (h), 14.) Alternatively, Parker seeks "nothing more than the right to end his life in his home" in Pennsylvania. (*Id.* ¶ 14.)

## II. LEGAL STANDARD

### A. Dismissal under Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). A facial challenge to jurisdiction contends that, even accepting the facts alleged in the complaint as true, jurisdiction is not proper. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Without jurisdiction, "the court cannot proceed at all in any cause" and "the only function remaining . . . is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotation omitted). The plaintiff bears the burden of proving jurisdiction exists. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B. Dismissal under Rule 12(b)(6)

A motion under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion, courts accept all well-pleaded facts as true, in the light most favorable to the plaintiff, but disregard any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although *pro se*

---

for standing, including that the plaintiff suffer a personal injury caused by the challenged action or law that will be redressed by the requested relief).

litigants are "held to a less stringent standard," *U.S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 575 (3d Cir. 1979), they "still must allege sufficient facts in their complaints to support a claim," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. DISCUSSION

### A. Plaintiff Lacks Standing to Challenge the ASFRA as Unconstitutional.

Article III of the Constitution limits the scope of the federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III § 2. The courts have developed several justiciability doctrines to enforce the case-or-controversy requirement, including the requirement that a litigant have standing to invoke the power of a federal court. *In re Schering-Plough Corp.*, 678 F.3d 235, 244 (3d Cir. 2012) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). To establish standing, a plaintiff must demonstrate at a minimum that (1) he has suffered a distinct injury that is "actual or imminent, not conjectural or hypothetical"; (2) there is a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action"; and (3) the requested relief will likely redress the injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992) (internal quotations omitted). Moreover, because "standing is not dispensed in gross, a plaintiff who raises multiple causes of action must demonstrate standing for each claim he seeks to press." *In re Schering-Plough Corp.*, 678 F.3d at 245 (internal quotation marks and citation omitted).

The purpose of the ASFRA is "to continue current Federal policy" by providing that "Federal funds may not be used to pay for items and services" intended to cause "suicide, euthanasia, or mercy killing of any individual." 42 U.S.C. § 14401(b). Here, Parker does not allege that he has sought, or is entitled to, medical aid in dying from a federally funded medical provider, or that medical aid in dying would otherwise be available to him but for the ASFRA.

Instead, Parker alleges only that the ASFRA "disables the ability of federally-funded medical centers to offer [medical aid in dying], even in states such as Vermont where this is legal" (Compl. ¶ 11.) These allegations do not establish a sufficient connection between the ASFRA and his claimed injury—i.e., being denied access to medical aid in dying in Pennsylvania. Plaintiff's asserted injury is instead traceable to Pennsylvania law, which criminalizes the relief he seeks, and is not attributable to the ASFRA. Even if Parker could demonstrate the requisite causal connection, declaring the ASFRA unconstitutional would not likely redress his injury. Illustratively, if the ASFRA were struck down and Pennsylvania law remained intact, Parker would still be prohibited from gaining the relief he seeks. Since the ASFRA's connection to Plaintiff's asserted injury is tenuous and declaring the ASFRA unconstitutional would not redress the injury, Parker does not have standing to challenge the statute.

    **B. Pennsylvania's Prohibition on Assisted Suicide.**

Parker claims that Pennsylvania's law prohibiting assisted suicide, Section 2505, is unconstitutional. We construe Plaintiff's *pro se* Complaint as asserting that the threat of enforcement of this provision by individuals acting under color of state law deprives him of his constitutional rights and violates Section 1983. As a threshold matter, we find that Plaintiff has standing to challenge Section 2505 and that his claim is not barred by the doctrine of sovereign immunity. However, Plaintiff's Complaint must still be dismissed because, since he cannot show that Section 2505 is unconstitutional, he has not plausibly stated a claim under Section 1983.

    *1. Whether Plaintiff Has Standing to Challenge Section 2505.*

To establish standing Plaintiff must show that he has (i) a personal injury (ii) caused by the challenged action (iii) that can be redressed by a favorable decision from this Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. at 559–61. Defendant Krasner argues that "Plaintiff's allegations show

that he is not facing a 'certainly impending' injury sufficient to grant standing[.]" (Pr. Inj. Opp'n, ECF No. 9, 4-5.) Specifically, Defendant Krasner contends:

> Plaintiff has not alleged that he has located any physician willing to assist Plaintiff in committing suicide … And Plaintiff cannot show that, if enforcement of § 2505 were enjoined, there would be any certainty that he would be able to locate such a physician. Indeed, if there are any physicians who might consider assisting Plaintiff if § 2505 were enjoined, those physicians might reasonably require Plaintiff to demonstrate his informed consent, competency, and voluntariness, and abide by a waiting period, rendering moot his request for injunctions against any state.

(Krasner Pr. Inj. Opp'n, ECF No. 9, 7-8.)[3] In summary, Krasner argues that Plaintiff's claimed injury is too speculative, because it requires the Court to assume facts not pled in his Complaint—i.e., that a physician would be willing to provide medical aid in dying but for Pennsylvania's prohibition. In *Govatos v. Murphy*, the District of New Jersey addressed a similar set of facts and found that, even though plaintiffs had not identified a specific plan for medical aid in dying, they still satisfied Article III standing. 2024 WL 4224629 at * 6. The District of New Jersey explained:

> [I]t is true that Govatos and Sealy have not received a six-month prognosis and do not (yet) qualify as "terminally ill" within the meaning of [N.J. STAT. ANN.] § 26:16-3. Rather, they allege that they are currently suffering the "stress" and "anxiety" of not knowing whether they *could* access medical aid in dying as non-New Jersey residents … They seek the "peace of mind" of knowing that they could obtain medical aid in dying when their prognoses worsen, and their suffering becomes unbearable. Because of the seriousness of their illnesses and their credibly alleged intention to seek access to medical aid in dying when their illnesses become terminal, Govatos and Sealy have demonstrated a risk of future harm that is sufficiently imminent and substantial to satisfy Article III[.]

---

[3] Although Defendant Krasner raised this argument in response to Plaintiff's motion seeking a preliminary injunction, we also consider these arguments to the extent they implicate Plaintiff's standing to challenge Section 2505 more generally.

7

Construing the allegations in Plaintiff's *pro se* Complaint liberally, we likewise find that Parker has demonstrated a risk of future harm, grounded in the uncertainty of whether he will be able to access medical aid in dying, that is "sufficiently imminent and substantial" to satisfy Article III standing. Plaintiff's challenge to Section 2505 will therefore not be dismissed on this basis.

### 2.     *Whether Plaintiff's Section 1983 Claims Against State Officials Are Barred by Sovereign Immunity.*

The Commonwealth Defendants, who are sued in their official capacity, argue that Plaintiff's Section 1983 claims against them are barred by Eleventh Amendment sovereign immunity. Accepting the allegations in the Complaint as true, and construing them in the light most favorable to Plaintiff, sovereign immunity does not bar Plaintiff's claims against the Commonwealth Defendants.

Generally, states are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity. *See Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). Because an official capacity suit against a state official is really a suit against the state, "[a] state official sued in an official capacity is generally entitled to immunity under the Eleventh Amendment." *Poplawski v. Vilarino*, No. 21-3084, 2022 WL 717277, at *2 (E.D. Pa. Mar. 10, 2022). However, the Supreme Court recognized a limited exception to this immunity in *Ex parte Young* when the suit seeks prospective injunctive relief to prevent a continuing violation of federal law. *Ex parte Young*, 209 U.S. 123, 157 (1908). "[A] person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the 'legal fiction' of *Ex parte Young*, despite the text of the Eleventh Amendment." *Koslow*, 302 F.3d 161 at 168.

Here, the Commonwealth Defendants concede that Parker seeks prospective injunctive relief; nevertheless, they argue that the *Ex parte Young* exception still does not apply. According to the Commonwealth Defendants, since their obligation to enforce Section 2505 is attenuated,

8

Parker cannot properly characterize the threat of enforcement as an ongoing violation of federal law. In support, the Commonwealth Defendants cite *Doe v. Schorn*, No. 23-3252, 2024 WL 128210 (E.D. Pa. Jan. 10, 2024) and *1st Westco Corp. v. School Dist. of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993). Although these cases support the proposition that there must be a sufficient connection between the enforcement obligations of the state official and provision at issue for the *Ex parte Young* exception to apply, the cases are distinguishable. Most notably, both cases were decided at summary judgment after an opportunity for discovery. In *Doe*, the court's analysis was bolstered by a record showing that the enforcing commission "has never asked the Attorney General to prosecute someone for violating the [provision at issue]." 2024 WL 128210 at * 390. Likewise, in *1st Westco Corp.*, the Third Circuit emphasized that "there is no evidence . . . to demonstrate that two of the state's highest policy officials would have filed suit" to enforce a minor infraction related to a construction contract. 6 F.3d 108, at 114-15. Here, Plaintiff's allegations implicate Pennsylvania's criminal code and issues of significant gravity. Therefore, it would be premature for the Court to find that sovereign immunity bars Plaintiff's claims without the opportunity to engage in discovery and develop a record on whether the relevant state officials are likely to enforce Section 2505.

### 3. *Plaintiff Fails to State a Claim.*

Despite finding that Parker has standing to challenge Section 2505, and that his claims are not barred by the doctrine of sovereign immunity, Plaintiff's Complaint must still be dismissed because he fails to plausibly state a claim. Construing Plaintiff's claim as proceeding under 42 U.S.C. § 1983, he fails to plausibly allege an underlying violation of federal law.[4] *See West v.*

---

[4] Defendant Krasner also argues that "[t]he Complaint should be dismissed for failure to state a claim because … [u]nder Pennsylvania law, the Office of the District Attorney is not a proper party to be sued, and instead suit must be brought naming as the defendant the City of Philadelphia." (Krasner MTD Br., ECF No. 8-1 at 2-3.) Although Defendant Krasner cites significant support for this assertion, (*see id.*

9

*Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.")  Parker argues that Pennsylvania's criminalization of assisted suicide violates the First, Thirteenth, and Fourteenth Amendments of the Constitution.  However, none of these provisions render Section 2505 unconstitutional.

The First Amendment safeguards the right to free speech, and the provisions of the First Amendment bind state actors by way of incorporation through the Due Process Clause of the Fourteenth Amendment.[5]  *See Locke v. Davey*, 540 U.S. 712, 718 (2004).  Parker contends that "suicide . . . is a legitimate form of expression under the First Amendment" and frames prohibitions on assisted suicide as infringing on self-expression since "[m]any individuals have committed suicide to make a statement to society." (ECF No. 15, at 5.)  Plaintiff's argument fails because, to the extent Pennsylvania's prohibition on assisted suicide can be construed as burdening his self-expression, such constraints are merely incidental to the state's legitimate regulation of conduct.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech.  That is why a ban on race-based hiring may require employers to remove 'White Applicants Only' signs.")

---

at n.2), there is a dispute in this circuit as to whether or not the District Attorney is amenable to suit under Section 1983.  *See Reitz v. Cty. Of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("[DA's Office] is not an entity for purposes of § 1983 liability."); *but see Kaminski v. Office of DA of Northampton Cty.*, No. 23-cv-04962, 2024 WL 3938832 at *2 (E.D. Pa. Aug. 26, 2024) (stating that despite *Reitz*, the question of whether the district attorney's office is amenable to suit under § 1983 "remains far from established in this Circuit"); *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711-12 (E.D. Pa. 2015).  Even if the District Attorney is not a proper party, the Court would construe Plaintiff's *pro se* Complaint as against the City of Philadelphia, so dismissal would not be warranted on this basis.

[5] Since Plaintiff is *pro se*, we construe his First Amendment claim, to the extent it is against state actors, as proceeding pursuant to the Due Process Clause of the Fourteenth Amendment based on the doctrine of incorporation.

The Thirteenth Amendment prohibits involuntary servitude. In *Griffin v. Breckenridge*, the Supreme Court described the historical basis for the Thirteenth Amendment, which gave Congress the "power . . . rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." 403 U.S. 88, 105 (1971) 12 (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440 (1968)). Parker argues that "he is forced to live against his will," which he claims "is the ultimate slavery, leaving him literally trapped in his body." (ECF No. 15, 5.) We find the Thirteenth Amendment's prohibition on involuntary servitude does not encompass a guarantee of access to assisted suicide.

Parker next argues that Pennsylvania's prohibition on assisted suicide violates the Due Process Clause of the Fourteenth Amendment.[6] Throughout his pleadings and briefing, Parker refers to the Due Process and Equal Protection Clauses of the Fourteenth Amendment. However, the Supreme Court has squarely rejected arguments that a state prohibition on assisted suicide is unconstitutional based on these constitutional provisions. *See Glucksberg*, 521 U.S. at 719-36 (holding that state ban on assisted suicide did not violate the Due Process Clause of the Fourteenth Amendment); *Vacco v. Quill*, 521 U.S. 793, 793 (1997) (holding state prohibition on assisting suicide did not violate the Equal Protection Clause). Parker's arguments are foreclosed by binding Supreme Court precedent.

Finally, Parker references the Privileges and Immunities Clause of the Fourteenth Amendment and the Dormant Commerce Clause in passing. The Court interprets these references as an attempt to incorporate arguments regarding disparities in treatment between residents and non-residents of certain states that allow medical aid in dying. Specifically, Parker suggests that

---

[6] In Count VI, Plaintiff separately asserts that Pennsylvania's prohibition on assisted suicide violates his right to privacy. However, since the right to privacy is generally derived from the Due Process Clause of the Fourteenth Amendment, we assess these arguments together.

he used briefing from *Govatos v. Murphy* as a template for his pleadings in this action, and in that case the plaintiffs challenged New Jersey's residency requirement. 2024 WL 4224629 at * 1-4. However, since Parker has not alleged any specific plan to seek medical aid in dying in other jurisdictions and has not named any enforcement authorities from states other than Pennsylvania as defendants, he does not have standing to challenge restrictions in other states' laws. (*See supra* Section I at n.2.)

## IV.    **CONCLUSION**

For the foregoing reasons, we find that Plaintiff does not have standing to challenge the constitutionality of the ASFRA. In addition, Plaintiff fails to state a claim under Section 1983 since he has not plausibly pled that Pennsylvania's prohibition on assisted suicide violates his constitutional rights. To the extent Plaintiff seeks other relief, including generic declarations about his fundamental rights, he has not established standing under Article III to pursue this relief. For these reasons, Plaintiff's Complaint will be dismissed with prejudice and Defendants' Motions to Dismiss will be granted. Plaintiff will not be permitted to file an amended complaint. The Court concludes that amendment would be futile. Moreover, since Plaintiff cannot succeed on the merits, his Motion for a Preliminary Injunction and Consolidated Trial will be denied.[7] An appropriate order follows.

BY THE COURT:

*/s/ R. Barclay Surrick*

**R. BARCLAY SURRICK, J.**

---

[7] To show that he is entitled to a preliminary injunction, Parker must demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the preliminary relief is in the public interest. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Parker appears to raise new allegations and additional theories not specifically referenced in his Complaint. However, we considered these allegations and theories in assessing Parker's claims and found that they do not entitle him to relief.